Hillsborough
No. 7424

STATE OF NEW HAMPSHIRE

v.

RICHARD A. SPERO

March 31, 1977

*Emile R. Bussiere,* of Manchester, by brief and orally, for the defendant.

*David H. Souter,* attorney general, and *Richard B. Michaud,* attorney (*Mr. Michaud* orally) for the state.

LAMPRON, J. After trial by jury, defendant was found guilty of possession of marijuana in excess of one pound on September 1, 1974, in violation of RSA ch. 318-B (Supp. 1975). Prior to trial, defendant filed a motion to suppress the marijuana seized from his apartment pursuant to a search warrant issued by the Manchester District Court. After a hearing the Trial Court (*Keller*, C.J.) denied the motion, subject to defendant's exception, and the marijuana was later introduced at trial. All questions of law raised by this exception and other exceptions made during the course of trial were reserved and transferred by *Keller*, C.J. On appeal defendant addresses only the denial of his motion to suppress.

The basis of the defendant's motion is that the affidavit on which the search warrant was issued contained material misrepresentations by the affiant, Edmund LeBoeuf, deputy chief of the Manchester police. LeBoeuf did not acquire personally the information on which his affidavit was based. No additional evidence was presented to the magistrate. The issue is whether LeBoeuf's transmission by his affidavit of the information gathered by his fellow officers was designedly or recklessly misrepresented by him to such an extent that it materially altered the basic facts on which the magistrate found probable cause.

On August 30, 1974, a Thomas Metz was arrested and charged with several felonies. While in custody at the Manchester police station on that day, Metz provided Detectives Craig and Rule with information regarding various persons and events in the Manchester area. According to the report typed up by the detectives, Metz gave the following information regarding defendant:

> METZ goes on to say that one RICHARD SPERO, former owner of a beer pub at Elm & Granite Sts. is one of the biggest pushers in Manchester. Said that he goes to Boston every Friday and picks up marijuana and speed if he can get it. Said that about a week ago, he observed his friend (would not say who) with 1 lb. of marijuana bought by SPERO. SPERO lives somewhere in the English Village area. Checked and learned that he lives at 210 Garden Drive, apt. 21. METZ said that SPERO usually will fill bags (ounce) on Friday nights. Said that he supplies a few guys who distribute the marijuana. They will buy ounces for $15.00 and sell them for $20–$22.00. They (sic) guy who told him about the marijuana

advised him that SPERO buys everything he can on Fridays; told him that once he bought over 20 lbs. of marijuana. Also said that SPERO is packing a .38 or .45.

In the affidavit submitted to the Manchester District Court for purposes of obtaining a search warrant, LeBoeuf restated the above information as follows:

METZ also stated that a subject named Richard Spero of 210 Garden Drive, apartment #21, Manchester, N.H. is a heavy dealer in marijuana and speed in the Manchester area. He stated that Spero goes to Boston on Friday nights and purchases large amounts of marijuana and speed if he can get it, and transports same back to Manchester. Metz states that a week ago he witnessed a friend of his, refused to name friend, buy a pound of marijuana from Spero. Stated that Spero breaks his marijuana into ounce bags and supplies other subjects who sell the ounce bags. Metz has information that Spero has had as much as 20 lbs. of marijuana into the Manchester area at one time. He further states that Spero is known to be armed with a pistol.

■ The affidavit differed significantly from the report on which it was based. According to the affidavit Metz stated that he had witnessed the sale of a pound of marijuana by defendant to Metz's unnamed friend. According to the report, however, Metz only stated that he had observed his unnamed friend in possession of a pound of marijuana bought by defendant. That defendant was the source of that pound of marijuana was therefore hearsay, based on representations by Metz's unnamed friend. This is made clear by the reference further on in the report to "[t]hey (sic) guy who told [Metz] about the marijuana." This latter statement in the report also indicates that all or most of Metz's information regarding defendant's alleged marijuana dealing was based on his friend's statements, not on Metz's own observations. However, the statement formulated in the affidavit not only misstates what Metz claims to have observed, but covers up the fact that all or most of Metz's information came from another person.

■ The affidavit on which an application for a search warrant is based must set forth the underlying circumstances from which

an informant reached his or her conclusions as well as facts from which the magistrate can conclude that the informant is reliable. *State v. Mandravelis,* 114 N.H. 634, 637, 325 A.2d 794, 796 (1974); *State v. Moreau,* 113 N.H. 303, 307, 306 A.2d 764, 766 (1973); *Spinelli v. United States,* 393 U.S. 410, 416 (1969); *Aguilar v. Texas,* 378 U.S. 108, 114 (1964). In not disclosing that someone other than Metz was the actual source of the information, Le-Boeuf was able to circumvent the requirement that he substantiate that informant's credibility. Instead, Metz was posed as the sole informant, and because information as to Metz's reliability was provided, it appeared on the face of the affidavit that the requirements of *Spinelli v. United States supra,* had been met. It is clear, however, that because a second level of hearsay was involved, these requirements were in fact not met. *State v. Thorp,* 116 N.H. 303, 307, 358 A.2d 655, 659 (1976); *United States v. Carmichael,* 489 F.2d 983, 986 (7th Cir. 1973); *United States v. Roth,* 391 F.2d 507, 511 (7th Cir. 1967).

The manner in which this section of the affidavit is phrased also suggests that it was Metz who supplied the information regarding defendant's exact address in the Manchester Garden apartment complex, when in fact Metz could only say that he thought defendant lived in the area of the neighboring English Village apartment complex. Defendant's exact address was supplied by Lt. Craig. The observations of a fellow police officer may be incorporated into an affidavit for a search warrant. *State v. Mandravelis,* 114 N.H. 634, 638, 325 A.2d 794, 796 (1974). Here, however, the danger in providing defendant's address in this particular manner lies not in the unreliability of the statement, but rather in the degree of detailed knowledge which the statement imputes to Metz, thereby bolstering his apparent credibility. *United States v. Belculfine,* 508 F.2d 58, 62 (1st Cir. 1974); *see State v. Collins,* 112 N.H. 449, 452, 298 A.2d 742, 744 (1972).

Although the trial court allowed defendant to challenge the search on the grounds that the affidavit submitted by Deputy Le-Boeuf contained material misrepresentations, this court has never decided whether or not a defendant has the right to challenge a facially sufficient affidavit. *See State v. Breest,* 116 N.H. 734, 367 A.2d 1320 (1976). The United States Supreme Court has never decided this issue under the fourth amendment to the United States Constitution. *Rugendorf v. United States,* 376 U.S. 528, 531–32

(1964); *North Carolina v. Wrenn,* 417 U.S. 973 (1974). State courts and the federal circuit courts are in disagreement as to whether or when a defendant is entitled to a hearing for purposes of attacking a facially sufficient affidavit. *See* cases collected *id.* at 975 (White, J., dissenting from denial of certiorari).

The purpose of the affidavit submitted to a magistrate is to provide him with information on which he can make an objective and detached determination of the existence of probable cause for the search requested. *Giordenello v. United States,* 357 U.S. 480, 486 (1958); *Johnson v. United States,* 333 U.S. 10, 14 (1948). If the magistrate is provided with erroneous information, he is denied the ability to make that determination, and his function is undermined. *Commonwealth v. Hall,* 451 Pa. 201, 204, 302 A.2d 342, 344 (1973); Herman, *Warrants for Arrest or Search: Impeaching the Allegations of a Facially Sufficient Affidavit,* 36 Ohio St. L.J. 721, 729 (1975). The magistrate is limited to considering the information contained in the affidavit, along with any additional testimony supplied under oath. *State v. Mandravelis,* 114 N.H. 634, 637, 325 A.2d 794, 796 (1974). In this case LeBoeuf testified he gave no further evidence before the magistrate.

 Just as a facially insufficient affidavit cannot be the basis for a search warrant, regardless of actual probable cause, *State v. Mandravelis,* 114 N.H. 634, 325 A.2d 794 (1974), a facially sufficient but misrepresentative affidavit cannot be the basis for a search warrant as the magistrate will not have been able to make the requisite determination of probable cause. 51 Cornell L.Q. 822, 825 (1966). Therefore, to ensure that search warrants are issued only upon probable cause, as required by part I, article 19 of the New Hampshire Constitution, we hold that a defendant is entitled to a hearing for the purpose of attacking a facially sufficient affidavit once a preliminary showing has been made that the affidavit contains material misrepresentations by a police officer or other government agent. *United States v. Carmichael,* 489 F.2d 983, 988 (7th Cir. 1973); *United States v. Belculfine,* 508 F.2d 58, 63 (1st Cir. 1974); *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973); *People v. Alfinito,* 16 N.Y.2d 181, 211 N.E.2d 644 (1965); *see* Herman *supra;* Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence,* 84 Harv. L. Rev. 825 (1971). The misrepresentations in the affidavit, discussed above, were clearly material. The hearing on defendant's motion to suppress was therefore proper.

In order to suppress the evidence seized under the search warrant, however, more than just a material misrepresentation must be shown. *United States v. Carmichael*, 489 F.2d 983, 988 (7th Cir. 1973); Herman, *Warrants for Arrest or Search: Impeaching the Allegations of a Facially Sufficient Affidavit*, 36 Ohio St. L.J. 721, 727 (1975). The primary purpose behind the exclusionary rule is the deterrence of unlawful police conduct. *United States v. Janis*, 428 U.S. 433, 445–46 (1976); *United States v. Calandra*, 414 U.S. 338, 348 (1974). Therefore, the evidence in question should be suppressed only if the misrepresentations were made intentionally or recklessly. *United States v. Carmichael*, 489 F.2d at 988; *United States v. Luna*, 525 F.2d 4, 7 (6th Cir. 1975), *cert. denied*, 424 U.S. 965 (1976); *United States v. Marihart*, 492 F.2d 897 (8th Cir. 1974). A misrepresentation in an affidavit must be viewed as having been made recklessly if the affiant has no reasonable grounds for believing the statement to be true. *United States v. Luna*, 525 F.2d at 8; *United States v. Carmichael*, 489 F.2d at 989.

In this case LeBoeuf, an experienced officer, based the statements in his affidavit solely on the report prepared by Detectives Craig and Rule. "I am in charge of the detectives. I read all kinds of reports." It is clear from the report that Metz had himself made no observations with regard to defendant's dealing in marijuana, but had relied entirely on information supplied to him by his unnamed friend. LeBoeuf therefore had nothing upon which to base a belief that Metz had actually witnessed a sale of marijuana by defendant. Nor was there anything on which LeBoeuf could have reasonably based a belief that Metz had acquired by personal observation his information about defendant's dealings in drugs. Furthermore, the affidavit is formulated in almost boilerplate form to fit the requirements of *Aguilar v. Texas*, 378 U.S. 108 (1964), *Spinelli v. United States*, 393 U.S. 410 (1969), and *State v. Mandravelis*, 114 N.H. 634, 325 A.2d 794 (1974), thus indicating a careful and conscious effort to create an affidavit which, on its face, would withstand the magistrate's scrutiny. *See* Grano, *A Dilemma for Defense Counsel: Spinelli-Harris Search Warrants and the Possibility of Police Perjury*, 1971 U. Ill. L.F. 405 (1971). If the affidavit had been in accordance with the facts in the report it would not have sustained a finding of probable cause. *United States v. Carmichael*, 489 F.2d 983, 988 (7th Cir. 1973).

On the record presented in this case we hold that the misrepresentations of material facts in the affidavit were made either intentionally or recklessly by LeBoeuf. Whichever the case, the marijuana seized in execution of the search warrant which was obtained should have been suppressed.

*Defendant's exceptions sustained; case remanded.*

DOUGLAS, J., did not sit; the others concurred.