398 So.2d 1057 (1981)
STATE of Louisiana
v.
Kerwin HILLARD.
No. 80-KA-2430.
Supreme Court of Louisiana.
May 18, 1981.
*1058 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., William Weatherford and Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Anthony Marabella and M. Michele Fournet, Baton Rouge, Frank J. Shaia, Director, for defendant-appellant.
DENNIS, Justice.[*]
Defendant, Kerwin Hillard, was tried and convicted of first degree murder, La.R.S. 14:30, and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence, in accordance with the recommendation of the jury after a separate sentencing hearing. On appeal defendant argues four assignments of error. We find that three assignments present no reversible merit, but a fourth requires that we remand the case for a determination of whether the juvenile record of the key state witness is sufficiently probative of the witness's veracity in this case that cross-examination should have been permitted on the subject.

Facts
On the evening of October 14, 1979, the Yellow Cab Company in Baton Rouge dispatched a cab driven by Michael Bonds to a Burger Chef restaurant. Defendant, Kerwin Hillard, and another man, Robert Johnson, *1059 entered the cab and asked to be taken to 1657 Groom Road in nearby Baker, Louisiana. Somewhere on Groom Road one of these two men shot Bonds four times in the head in the course of armed robbery. Bonds was dragged from the cab and was left lying in the middle of Groom Road. He died several hours later in a Baton Rouge hospital.
Both Robert Johnson and Kerwin Hillard were arrested in connection with the murder. Johnson gave a statement subsequent to his arrest in which he identified Hillard as the murderer and denied any foreknowledge of the armed robbery. Pursuant to a plea bargain with the district attorney's office Robert Johnson agreed to testify against Kerwin Hillard and plead guilty to manslaughter and to being an accessory after the fact to armed robbery in exchange for a promise of a fifteen year sentence. At trial Johnson again identified Hillard as the murderer and again disclaimed any knowledge of the robbery. Hillard on the other hand claimed that he had no knowledge that a crime was going to be committed until he was awakened from the sleep into which he had fallen by Bonds' plea for his life immediately precedent to being shot by Johnson.
The state also presented at trial three members of a family who testified that on the night of the murder the defendant admitted that he had killed somebody.[1] However, some of these statements were inconsistent with prior statements these witnesses had made, and the prosecutor acknowledged that these witnesses had not come forward initially and that he "put the fear of God" in them by threatening to prosecute them as accessories after the fact.
ASSIGNMENT OF ERROR NO. 10
By this assignment, defendant challenges the trial court's refusal to permit questioning of Robert Johnson about his juvenile record during cross-examination. Defendant argues that he was denied his constitutional right to confrontation by this trial court ruling.
The Sixth Amendment to the Constitution and Article 1, § 16 of our Louisiana constitution, guarantee the right of an accused in a criminal prosecution to be confronted with the witnesses against him. This right is secured for defendant in state as well as federal prosecutions. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Confrontation means more than being allowed to confront the witnesses physically. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1109-1110, 39 L.Ed.2d 347 (1974); J. Wigmore, Evidence, § 1395, p. 123 (3d ed. 1940). Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Further, the cross-examiner has traditionally been allowed to impeach, or discredit, the witness. One way of discrediting the witness is to introduce evidence of prior criminal convictions of the witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness would be less likely than the average citizen to be truthful in his testimony. Davis v. Alaska, supra, 415 U.S. at 316, 94 S.Ct. at 1110.
In Davis v. Alaska, supra, the Supreme Court said that the denial of effective cross-examination "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." 415 U.S. at 318, 94 S.Ct. at 1111. The court in Davis therefore held that the state's interest in protecting the confidentiality of a juvenile offender's record was subordinate to the constitutional right of effective cross-examination for bias of an adverse witness. Id. at 320, 94 S.Ct. at 1112.
Similarly in State v. Toledano, (La.) 391 So.2d 817 (1980), we held that when the defense moves for production of the juvenile's *1060 record while cross-examining an alleged co-participant, a prior juvenile adjudication may be sufficiently probative of the witness's veracity to necessitate disclosure. Thus, we held that the trial judge erred in denying the defense motion without first examining that juvenile record.
The facts in this case suggest that the defendant may have been denied his constitutional right to confrontation, i. e., to effective cross-examination. The state's case rested primarily on the testimony of the alleged co-participant in the crime, Robert Johnson. Though the state produced witnesses who testified that the defendant admitted killing someone, it was brought out during the trial that these witnesses were testifying because they had been threatened with prosecution if they did not cooperate with the state. The jury may not have given decisive weight to this testimony, or may have given great weight to it only because they also believed that Robert Johnson's testimony about the defendant being the trigger-man was true. Thus, it was crucial to the defense that Johnson's testimony be discredited as fully as possible.
The jury was in fact presented with evidence which could have led it to discredit Johnson's testimony. It was brought out at trial that Johnson had initially rejected plea bargain arrangements wherein he was first promised a twenty-six year sentence, and, after rejecting that, a twenty-one year sentence, which he also rejected. In addition Johnson agreed to plead guilty to a crime that he denied committing during the trial. Also, Johnson's testimony concerning the crime was inconsistent. At least three times Johnson swore that he did not realize a homicide would be committed until he heard the sound of gun shots. However, at another point he testified that he heard the victim pleading for his life and saying he would "give you anything you want."[2]
Further there was testimony adduced at trial which indicated that Johnson had possession of the murder weapon after the killing.
The defense also impeached Johnson's credibility by causing him to admit that the statement given to the police after his arrest contained a number of lies regarding the details of the crime. Defense counsel also managed to bring out the fact that Johnson had been convicted of burglary.
Given the impeachment efforts of the defense and the other evidence tending to discredit Johnson, it is possible that evidence revealing a juvenile record might not have added anything to the defense's cross-examination. But that determination could have been made only after an examination of the juvenile record by the trial judge and preservation of it for our review. State v. Toledano, supra. If for example, that record showed a history of violent crime such as adjudications involving armed robbery or involvement in a homicide or an attempted homicide, it would be very pertinent to a determination of Johnson's veracity in this case because of the divergent stories of Johnson and Hillard, and because Hillard testified that he had never been convicted of anything before. Likewise, if Johnson's juvenile adjudications reveal a life history of pathological dishonesty, it would also be very relevant to the issue of Johnson's veracity.[3] If on the other hand his record shows only a few adjudications of minor offenses, given the significant impeachment that had already occurred, it perhaps could not be fairly said that the defendant was denied his right to effective cross-examination.
The examples given in the preceding paragraph do not of course cover every situation. The crucial question in each case involving a witness's juvenile adjudications *1061 and the right to confrontation is whether the defendant will be prevented from employing a means of impeachment that would be effective in his particular case if the juvenile record cannot be referred to. Note, Constitutional Restraints on the Exclusion of Evidence in the Defendant's Favor: The Implications of Davis v. Alaska, 73 Mich.L.Rev. 1465, 1471 (1975). If the trial judge determines that the admission of evidence of juvenile adjudications is necessary for a fair determination of the defendant's guilt or innocence then the evidence should have been admitted, and a new trial will be necessary. State v. Toledano, supra, 391 So.2d at 820; see also Rule 609(d) of the Federal Rules of Evidence.[4] If on the other hand it is determined that the evidence was not sufficiently probative of Johnson's veracity such that its admission was not necessary for a fair determination of defendant's guilt, then the judgment of the trial court may be reinstated, reserving to the defendant the right to appeal such a ruling.
The defendant has briefed and argued three other assignments of error. Even though none of these present reversible merit for the sake of judicial efficiency we will dispose of these at this time. Thus, defendant's conviction is conditionally affirmed, pending final disposition of the issue discussed under assignment of error number ten.
Defendant's remaining assignments of error concern alleged improprieties in the jury selection process.
ASSIGNMENT OF ERROR NO. 2
In this assignment defendant argues that the trial court erred in refusing to disqualify prospective jurors who had observed portions of an earlier trial during which the trial judge in convicting the accused emphasized the defendant's failure to produce certain witnesses in his behalf. Defendant claims that the trial court's remarks irrevocably prejudiced his right to a fair trial by creating the impression in the mind of prospective jurors that the defendant had some responsibility to produce evidence.
Prior to commencement of voir dire examination, the prospective jury panel observed a trial of an unrelated misdemeanor case. Facing charges of disturbing the peace and resisting arrest, the defendant, one Charles Elsy, took the stand in his own behalf. During his testimony, Mr. Elsy made repeated reference to witnesses who could corroborate his version of the incident. After Elsy completed his account, the judge questioned him about why he failed to produce these witnesses that were allegedly so vital to his defense.
A reading of the exchange between the judge and Elsy reveals that the judge's remarks were merely intended to point out the lack of defense evidence refuting the state's case. See State v. Clark, 352 So.2d 223 (La.1977); State v. Henderson, 352 So.2d 206 (La.1977). In view of the fact that Elsy made repeated claims during the portion of the trial viewed by the prospective jurors that his witnesses could contradict the police version of the event, the trial judge's remarks about the absence of these witnesses probably would not have been interpreted by the jurors to mean that the defendant had a duty to establish his innocence. Even in the event that an individual juror might have become confused by the Elsy trial about a duty of the defense to adduce evidence of innocence, the trial judge cleared up this misunderstanding by instructing the jury during his final instructions about the presumption of innocence. See State v. Strange, 334 So.2d 182 (La. 1976).
This assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 4 and 5
By these assignments, defendant contends that the trial court erred in excusing two prospective jurors on Witherspoon grounds. See Witherspoon v. Illinois, 391 *1062 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). It is not necessary for this court to review the merits of the defendant's Witherspoon argument because the state utilized only seven of its twelve peremptory challenges during the course of jury selection. See La.C.Cr.P. art. 799. Article 800 of the Code of Criminal Procedure provides that "the erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law." The fact that a Witherspoon challenge is involved in this case does not abrogate the provisions of La.C.Cr.P. art. 800. State v. Skelton, 340 So.2d 256 (La.1976).
These assignments are without merit.
Accordingly, the defendant's conviction is conditionally affirmed pending disposition on remand of the issue discussed in assignment of error number ten in a manner not inconsistent with this opinion.
REMANDED.
NOTES
[*] The Honorables Pike Hall, Jr., Charles A. Marvin and Jasper E. Jones, Judges of the Court of Appeal, Second Circuit, participated in this decision as Associate Justices ad hoc, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] One of the members of the family testified that Hillard said "they" (referring to Johnson and himself) had robbed and killed someone.
[2] The defendant for his part testified that he first became aware of the robbery as he was awakened from sleep by the cab driver, pleading for mercy and telling Johnson "you can have the money."
[3] A substantial juvenile record might also indicate that the plea bargain made by the state was so generous that Johnson is loath to do anything to upset the authorities before he actually pleads and that plea is accepted. See Commonwealth v. Ferrara, 368 Mass. 182, 330 N.E.2d 837 (1975).
[4] One writer has suggested that the Supreme Court in Davis adopted a modified form of Rule 609(d) by constitutional interpretation. See Meier, 3 Am. Journal of Criminal Law, 221, 230 (1974).