421 So.2d 220 (1982)
STATE of Louisiana
v.
Kerwin HILLARD.
No. 82-KA-0009.
Supreme Court of Louisiana.
October 18, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Glen Petersen, William Weatherford, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Anthony J. Marabella, Jr., M. Michele Fournet, Baton Rouge, of Office of the Indigent Defender, for defendant-appellant.
BLANCHE, Justice.
Defendant, Kerwin Hillard, was tried and convicted of first degree murder, La.R.S. 14:30, and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. Hillard appealed, and we found only one of his assignments of error to have merit. State v. Hillard, 398 So.2d 1057 (La.1981). We remanded the case for a determination of whether the juvenile record of the key state witness was sufficiently probative of the witness's veracity that its admission was necessary for a fair determination of the defendant's guilt. If the trial court concluded that the witness's juvenile record was not sufficiently probative of his veracity, the court was to affirm the defendant's conviction subject to his right to appeal. On the other hand, if the juvenile record was sufficiently probative, the trial court was ordered to grant a new trial. On remand, the trial court found that the witness's juvenile record was not sufficiently probative of his veracity, and that the introduction of the juvenile record would have added nothing to the defense cross-examination. We reverse.
Kerwin Hillard and Robert Johnson were arrested in connection with the murder of Michael Bonds, a Baton Rouge taxi cab driver. After his arrest, Johnson gave a statement wherein he admitted that he was *221 present in Bonds' cab when the latter was shot, but he identified Hillard as the murderer. Hillard, on the other hand, contended that Johnson was responsible for Bonds' murder. According to Hillard, he had fallen asleep in the cab and had awakened only upon hearing the driver pleading for his life before being shot by Johnson. The district attorney's office later entered into a plea bargain with Robert Johnson. In exchange for a promise of a fifteen year sentence, Johnson agreed to testify against Hillard and plead guilty to manslaughter and to being an accessory after the fact in armed robbery. Hillard, however, was not so lucky and was prosecuted for first degree murder.
The sole question before us is whether the defendant, Kerwin Hillard, was denied his constitutional right to confrontation by the trial court's refusal to allow questioning of Robert Johnson concerning his juvenile record during cross-examination. We could not fully address this issue in State v. Hillard, 398 So.2d 1057 (La.1981), for we were not furnished with Johnson's juvenile record at that time. Instead, we remanded the case to allow the trial court to examine Johnson's juvenile record and to make a determination of whether it was sufficiently probative of Johnson's veracity such that its admission was necessary for a fair determination of defendant's guilt. Since the trial court held that the witness's juvenile record was not sufficiently probative, we are now called upon to review the decision of that court.
The Sixth Amendment to the United States Constitution and Art. 1, Sec. 16 of our Louisiana Constitution, guarantee the right of an accused in a criminal proceeding to be confronted with the witnesses against him. State v. Hillard at 1059. A primary interest secured by the confrontation clause is the right to cross-examination. Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980); Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). This right to cross-examine is more than a desirable rule of trial procedure. Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). It is "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Chambers v. Mississippi, 410 U.S. at 295, 93 S.Ct. at 1046; Pointer v. Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).
The United States Supreme Court has also decided, however, that the right to cross-examine is not absolute, for it may bow to accommodate other legitimate interests in the criminal trial process. Chambers v. Mississippi, 410 U.S. at 295, 93 S.Ct. at 1046. But when the right to confrontation is denied or significantly diminished, the "ultimate of the fact-finding process" is called into question, and the court must closely examine the competing interest. Chambers v. Mississippi, 410 U.S. at 295, 93 S.Ct. at 1046; Berger v. California, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969).
Here, we must examine the relationship between the defendant's right to confrontation and the legitimate interest of the state in preserving the confidentiality of juvenile records. A balancing process is envisioned. We must determine, given the facts of this particular case, whether the defendant's confrontation rights outweigh the state's interest in keeping these juvenile records confidential.
On one side of the balance, there is the defendant's right to confrontation. Confrontation is important in that it allows "a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they might look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Ohio v. Roberts, 448 U.S. at 63-64, 100 S.Ct. at 2537-38; Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339-40, 39 L.Ed. 409 (1895). When the state's witness is the co-participant in the crime for which the defendant is *222 on trial, the right to confrontation becomes especially important, and great latitude is allowed in cross-examination. See State v. Lewis, 236 La. 473, 108 So.2d 93 (1959); State v. Jackson, 227 La. 949, 81 So.2d 5 (1955).
During Hillard's trial, the state called Lisa, Kevin, and Alma Beachem, each of whom had seen the defendant and Robert Johnson on the night of the murder. Lisa Beachem testified that she had observed the defendant carrying a pistol that night and had been later informed by Hillard that he had killed someone. On cross-examination, however, she admitted that some of her testimony was inconsistent with a prior statement she had made. In addition, Lisa Beachem revealed that the state had promised not to prosecute her as an accessory after the fact if she agreed to testify.
Kevin Beachem recalled seeing the defendant carrying a small pistol prior to the time of the killing. However, he saw Robert Johnson in possession of the same small pistol after the time the shooting occurred. Kevin's testimony conflicted with that of his sister Lisa in that he had heard the defendant say "they" had killed somebody. On cross-examination, Kevin Beachem also admitted that he had been threatened with prosecution if he did not testify.
Alma Beachem stated that she overheard the defendant tell her sister Lisa that he had killed someone. However, on cross-examination, the witness also conceded that she had been threatened with prosecution if she did not testify.
Robert Johnson was the crucial witness for the prosecution. He was the only person who could refute the defendant's explanation as to what occurred in the taxi cab prior to the shooting. The members of the Beachem family saw Hillard carrying the murder weapon before the shooting occurred, but only Johnson was seen with the pistol after the time of the killing. Also, the Beachems had testified only under threat of prosecution and may have been afraid to reveal the truth for fear of incurring the wrath of the prosecutors.
When Johnson took the stand, he continued to maintain, as he had done since his arrest, that Hillard was the trigger-man and was responsible for the murder of Michael Bonds. On cross-examination, defense counsel attempted to discredit Johnson's testimony. Johnson admitted that he had been offered a twenty-six year sentence by the state in return for his testimony, and then a twenty-one year sentence, both of which he rejected. A taped statement made by Johnson shortly after his arrest was played for the jury. The tape was stopped numerous times, and each time Johnson was forced to concede either that he had lied when he gave the statement or that the police officers had furnished him with the information. Defense counsel succeeded in bringing out several inconsistencies in Johnson's testimony. In addition, Johnson testified that he had been informed by the officers, before he implicated Hillard, that all they wanted was the trigger-man. The defense also managed to bring out the fact that Johnson had been convicted previously of burglary. The trial court, however, did not permit defense counsel to ask Johnson any questions concerning his juvenile record.
Johnson's juvenile record was later introduced into evidence during the trial court's hearing on remand. This record revealed the following adjudications:
(1) May 14, 1975  Robert Johnson was adjudicated a delinquent on an aggravated assault charge and was counseled and warned by the court. During a football game, Johnson had pulled out a knife concealed in his sock and cut his victim near the chest and behind the ear.
(2) April 26, 1976  Johnson was adjudicated a delinquent on two separate misdemeanor charges. The charges involved two shoplifting incidents on the same day at two different stores.
(3) October 10, 1977  Johnson was adjudicated a delinquent, his suspended commitment was revoked, and he was confined to the Louisiana Training Institute until July, 1978. Three *223 charges were involved. On May 4, 1977, Johnson had participated in the burglary of a truck. On September 9, 1977, Johnson committed a simple battery by striking his victim with a closed fist, causing bruises on his face and left eye. Finally, on September 30, 1977, Johnson participated in the burglary of a Billups Station where approximately $600 worth of merchandise was stolen.
Johnson's juvenile record was very relevant to the issue of his veracity. A swearing match had developed between Robert Johnson and Kerwin Hillard. Although his testimony had been shown to be inconsistent and to conflict with the statement he had given after his arrest, Johnson had been consistent on one point. He had stated since his arrest that the defendant was responsible for the murder of the cab driver and was the trigger-man. Conversely, Hillard had maintained that it was Johnson who had shot and killed the cab driver. Evidence of Johnson's prior juvenile adjudications for aggravated assault and simple battery would have shown his tendency toward violent behavior and may have influenced the jury to give more weight to the testimony of the defendant. The witness's two adjudications for shoplifting and two adjudications for burglary have a direct bearing on his credibility and would have assisted the defendant in his attempts to discredit Johnson's testimony. In addition, Johnson's previous adjudications were relevant to show the bias, interest, or corruption of the witness. With evidence of such a substantial juvenile record, the defense could have asserted that the plea bargain was so generous that Johnson was loathe to do anything to upset the authorities before he pled and the plea was accepted. State v. Hillard at 1060 n. 3.[1]
Weighed against the defendant's right to confrontation and cross-examination of the witness is the state's interest in maintaining the confidentiality of juvenile records. Davis v. Alaska, 415 U.S. 308, 319, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974), discussed the policy behind the confidentiality of juvenile records:
"The state argues that exposure of a juvenile's record of delinquency would likely cause impairment of rehabilitative goals of the juvenile correctional procedures. This exposure, it is argued, might encourage the juvenile offender to commit further acts of delinquency, or cause the juvenile offender to lose employment opportunities or otherwise suffer unnecessarily for his youthful transgression."
In this case we find that the defendant's right to confrontation outweighs the policy of confidentiality. Johnson, who will be spending the next fifteen years in prison, will hardly be discouraged from committing other crimes or from gaining employment or otherwise suffer because his juvenile record is exposed. Use of the juvenile record to cross-examine the witness is essential to Hillard, however, for it may mean the difference between life imprisonment and acquittal. The juvenile record is sufficiently probative of the witness's veracity as to necessitate its disclosure, and the trial court erred in not granting defendant a new trial.
For the foregoing reasons, the conviction and sentence are reversed, and the case is remanded for a new trial.
MARCUS, J., dissents.
NOTES
[1] The defendant's right to full cross-examination of the witness in order to expose any bias or interest of the witness which might influence his perceptions or color his testimony is recognized by statute, La. R.S. 15:492. State v. De-Cuir, 364 So.2d 946 (La.1978); State v. Kellogg, 350 So.2d 656 (La.1977).