Cheshire
No. 81-429

## THE STATE OF NEW HAMPSHIRE

v.

## CARL J. CHAISSON

January 24, 1983

*Gregory H. Smith,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, and *Carl J. Chaisson*, pro se, by brief, and *Mr. Duggan* orally, for the defendant.

KING, C.J. The defendant, Carl J. Chaisson, appeals his convictions of theft by unauthorized taking, RSA 637:3, burglary, RSA 635:1, and conspiracy to receive stolen property, RSA 629:3, RSA 637:7.

On March 27, 1981, while G. Jackson Jones was at work, his house was burglarized and a large quantity of silver, a number of candelabras, and two guns were taken. Jones notified the Keene police of the crime.

On March 28, 1981, Harold Andrews, a retired coin dealer who had been working with Corporal Eugene O'Brien of the New Hampshire State Police on an unsolved burglary in Dublin, New Hampshire, went to an apartment at 49 Franklin Street in Keene. Andrews had been told by an informant sometime prior to this that "a gentleman that was serving time up at [the Cheshire County House of Correction] had some items that he would be interested in selling when he got out." Andrews met the defendant at the Keene apartment. The defendant showed Andrews silverware, candelabras, a television set and two guns which were in the basement of the apartment. The defendant stated that the items were "hot." Andrews told the defendant that he could not handle the articles but would contact a friend in Massachusetts. Instead, Andrews notified Corporal O'Brien of the New Hampshire State Police.

Corporal O'Brien contacted Sergeant Hardy of the Keene police. Hardy called Jones and prepared an affidavit to support a search warrant for the apartment at 49 Franklin Street. Hardy also prepared a warrant for the arrest of the defendant and a complaint. As a result of the execution of the search warrant, the police recovered most of the property stolen from Jones' home.

At the time of the search of the apartment, the defendant was not present. He arrived at his apartment later that evening and was arrested. At the time of his arrest, the defendant was advised of his *Miranda* rights and taken to the Keene Police Station. There he was again advised of his rights and admitted that he understood them. The defendant offered to give the police information on the burglary if the police agreed to release him on personal recognizance, but the police refused this proposal. Chaisson at that time gave a statement to the police implicating Joey Lee Taylor and John Settle, Jr. (*see State v. Settle*, 123 N.H. 34, 455 A.2d 1031 (1983)) and eventually made a full confession. The defendant was indicted for theft by unauthorized taking, burglary, and conspiracy to receive stolen property.

Prior to trial, the defendant filed a motion to quash either the indictment for theft by unauthorized taking or the indictment for conspiracy to receive stolen property on the ground that they were multiplicitous. The Trial Court (*Pappagianis*, J.) denied the motion. The defendant also moved to quash the indictments for burglary and conspiracy to receive stolen property on the grounds that they failed to allege facts necessary to establish all of the elements of the offenses, and failed to allege that the defendant acted with the required mental state. These motions also were denied.

The defendant argued that the evidence discovered during the search of his apartment should be suppressed because the affidavit supporting the search warrant contained intentional misrepresentations, rendering the search warrant invalid. He contended that his confession should be suppressed as the fruit of an illegal search. Additionally, he argued that his confession should be suppressed because it was obtained in violation of his sixth amendment right to counsel. The trial court denied the motion to suppress the confession and the evidence obtained as a result of the search.

During the defendant's trial, the trial court refused to permit any witness to be impeached with evidence of a prior criminal conviction. Specifically, the trial court denied the defendant's motion to impeach the credibility of Harold Andrews, a State's witness, with a prior criminal conviction.

After a police officer, testifying on behalf of the State, said that the defendant in his confession had confided that he had met Settle and Taylor while they were in jail serving time, the defendant moved for a mistrial. The court instructed the jury to disregard this testimony and denied the defendant's motion for a mistrial.

The jury convicted the defendant of the three offenses. He appeals the denial of his motions to quash as well as his motion to suppress. He contends that the court erred in refusing to grant a mistrial and in refusing to permit the defendant to cross-examine the State's witness about prior criminal convictions. We affirm in part, reverse in part, and remand for a new trial.

The defendant appeals the denial of his motion to quash either the indictment for conspiracy to receive stolen property or the indictment for theft by unauthorized taking. He contends that because both the crime of theft by unauthorized taking and the crime of receiving stolen property are termed "theft" by the statutes, RSA 637:3, 637:7, the trial court was required to dismiss one of the indictments prior to trial. He further contends that the fact that he was actually indicted for conspiracy to receive stolen property, RSA 629:3, RSA 637:7, rather than for receiving stolen property does not vitiate his argument.

It is true that a defendant cannot be charged with theft and receiving the same stolen property from himself, *State v. Larkin*, 49 N.H. 39, 43 (1869). *But cf. State v. McNally*, 122 N.H. 892, 896–98, 451 A.2d 1305, 1307–08 (1982) (defendant may be convicted of larceny and retention of stolen property). However, conspiracy to receive stolen property is a separate and distinct crime from the crime of receiving stolen property. *See State v. Sias*, 17 N.H. 558, 559 (1845). The act which the crime of conspiracy punishes is an *agreement* to commit or cause the commission of a crime. RSA 629:3. In the present case the defendant was charged with conspiracy to receive stolen property, not with the actual receipt of stolen property. Therefore, *Larkin* is not directly applicable to this situation.

The defendant submits that the trial court erred when it refused to quash the burglary indictment. He states that the indictment was defective because it failed to enumerate any facts of the crime of theft. The indictment charged that the defendant "did enter the occupied structure . . . with the purpose to commit the crime of theft therein. . . ." Relying on *State v. Bussiere*, 118 N.H. 659, 392 A.2d 151 (1978), the defendant argues that when one crime is defined in terms of another crime, the necessary elements of the second crime must be included in the indictment. In *Bussiere*, we held that an indictment which stated that on a specified date and at a specified place the defendant "did purposely engage in sexual penetration in the form of sexual intercourse with [a named victim], not his spouse, when the victim . . . did submit to such sexual penetration by . . . [the defendant] under circumstances involving kidnapping," was insufficient because it failed to enumerate the facts establishing the necessary elements of the offense of kidnapping. *Id.* at 660–61, 392 A.2d at 153.

The present case is distinguishable from *Bussiere*. A person commits the crime of burglary "if he enters a building or occupied structure . . . with purpose to commit a crime therein . . . ." RSA 635:1. In *Bussiere*, the crime of kidnapping was an element of the crime of aggravated felonious sexual assault. *See* RSA 632-A:2, V (Supp. 1981). Here the crime of theft was not an element of the crime of burglary. All that the State was required to allege and prove was a *purpose* to commit theft. Because only the *purpose* to commit theft was an element of the crime of burglary, the State was not required to allege facts establishing the crime of theft. For the same reasons, the State was not required to allege the value of the property taken in the burglary.

The defendant further attacks the sufficiency of both the burglary and conspiracy-to-receive-stolen-property indictments on the ground

that neither indictment alleged that the acts specified in the indictments were committed with the required mental state. He contends that the State was required to allege that each action specified in the indictments was done purposely. The defendant's indictment for the burglary stated that the defendant:

> "did enter the occupied structure belonging to [the victim] located on the Graves Road, Keene, with the purpose to commit the crime of theft therein . . . and that the . . . [defendant] did enter and carry away various items of silver and firearms and other property therefrom, said property belonging to the . . . [victim]."

The defendant contends that the State was required to allege that the defendant "*purposely* did enter the occupied structure . . . with the purpose to commit the crime of theft . . . and that the defendant *purposely* did enter and carry away various items . . . ."

■■ This court rejected a similar argument in *Bussiere*. There, the defendant argued that the indictment was insufficient because it failed to allege that the defendant acted purposely when he acted "with the purpose of promoting or facilitating the commission of the offense . . . ." 118 N.H. at 662, 392 A.2d at 154. As stated in *Bussiere*, while RSA 626:2, I provides that a defendant must act with the required mental state with respect to each material element of the offense, it does not require an indictment to charge redundantly. *Id.* at 663, 392 A.2d at 154. In the present case, we hold that the State was not required to allege that actions charged in the indictment were done purposely with the purpose to commit the crime of theft, and therefore that the burglary indictment was sufficient. Similarly, the indictment for conspiracy to receive stolen property sufficiently alleged the mental state required for the commission of that crime.

The defendant attacks the conspiracy indictment because it used the word "secret" in describing the overt act committed by the defendant in furtherance of the conspiracy, instead of the phrase "receive, retain or dispose of" that is used in the receiving-stolen-property statute.

■ The State was not required to use the statutory words "receive, retain or dispose of." The defendant was not indicted for receiving stolen property. He was indicted for *conspiracy* to receive stolen property. The State was required to allege all the necessary elements of the offense of conspiracy, *see State v. Sampson*, 120 N.H. 251, 255, 413 A.2d 590, 592 (1980), including the commission of an overt act. *See* RSA 629:3, I. The State was not required to allege that

the defendant actually received the stolen property because that is not an element of the crime. It was only required to allege that the defendant or a co-conspirator committed an overt act in furtherance of the conspiracy. The allegation that the defendant secreted certain property constituted an allegation of such an overt act and was sufficiently informative to allow the defendant to prepare for trial. *State v. Merski*, 121 N.H. 901, 914, 437 A.2d 710, 718 (1981), *cert. denied*, 102 S. Ct. 1439 (1982).

The defendant attacks the indictment for conspiracy to receive stolen property on the ground that the statutory definition of the crime of receiving stolen property is unconstitutional. The statute provides: "A person commits theft if he receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it has probably been stolen, with a purpose to deprive the owner thereof." RSA 637:7, I. The defendant contends that the use of the word "probably" in the phrase "believing that it has probably been stolen" is unconstitutional because it does not require that the mental state of the defendant be proved beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970).

■ The use of the word "probably" in RSA 637:7, I does not permit the State to convict a defendant without proving the defendant's required mental state beyond a reasonable doubt. On the contrary, the State is required to prove beyond a reasonable doubt that the defendant knew that the property was stolen or believed that it had probably been stolen. *State v. Appletree*, 394 A.2d 744, 746–47 (Conn. 1977).

■ Chaisson argues that RSA 637:7, I, the receiving-stolen-property statute, is unconstitutionally vague because he could not understand a difference between the language of the statute, "believing that it has probably been stolen," and the phrase "probably believing that it has been stolen," which he contends would be unconstitutional under *In re Winship*. A criminal statute is void for vagueness if it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *State v. Albers*, 113 N.H. 132, 133, 303 A.2d 197, 199 (1973) (quoting *Connally v. General Const. Co.*, 269 U.S. 385 (1926)). The meaning of the phrase "believing that the property has probably been stolen" is clear. It does not require persons of common intelligence to guess at its meaning. It requires the State to prove beyond a reasonable doubt that the defendant believed that it was more likely than not that the property had been stolen. *State v. Appletree*, 394 A.2d at 746.

Nor is RSA 637:7, I unconstitutionally overbroad. A statute is void for overbreadth if it attempts to control or prevent activities constitutionally subject to State regulation by means which sweep unnecessarily broadly and thereby invade the area of a protected freedom. *State v. Albers*, 113 N.H. at 134, 303 A.2d at 199. The statute prohibiting the receiving of property which the defendant believed had probably been stolen does not invade any area of protected freedom. *But cf. NAACP v. Alabama*, 377 U.S. 288, 307–08 (1964).

The defendant also appeals the denial of his motion to suppress on the grounds that the search-warrant affidavit prepared by Sergeant Hardy of the Keene Police Department contained material misrepresentations which were intentionally made and that the evidence obtained during the search and the defendant's subsequent confession therefore should have been suppressed. The defendant contends that the search-warrant affidavit contained material misrepresentations because Andrews, who gave a description of the items in the apartment to O'Brien, a State police officer, testified that he gave only a very general description of the items in the defendant's basement. In contrast, the affidavit contained a detailed description of the items. The defendant claims that the affiant, Hardy, who allegedly received the description from O'Brien, actually filled in the details from the victim's description to make it appear that Andrews had supplied more detailed information.

In *State v. Spero*, 117 N.H. 199, 371 A.2d 1155 (1977), we held that if the defendant makes a preliminary showing that the affidavit contains material misrepresentations by the affiant, he is entitled to a hearing to attack the facial sufficiency of the affidavit. *Id.* at 204, 371 A.2d at 1158. If, after a hearing, the trial court determines that the misrepresentations were intentionally or recklessly made, part one, article nineteen of the New Hampshire Constitution requires that the evidence seized under the search warrant be suppressed. *Id.* at 205, 371 A.2d at 1158.

At a hearing on the alleged misrepresentations, the trial court heard conflicting testimony on whether the affidavit in fact contained misrepresentations. Andrews testified that he had generally described the items which he says were in the defendant's basement. He conceded, however, that he could not remember a number of details about the incident. The affiant Hardy testified that O'Brien had informed him that Andrews had given him the detailed description which appeared in the affidavit.

The question whether the affiant intentionally misrepresented facts in the affidavit was a question of fact for the trial

court. We will not disturb its finding unless it is unreasonable. *See Taylor v. Gagne*, 121 N.H. 948, 949, 437 A.2d 262, 263 (1981). The trial court was not required to accept the testimony of Andrews because it had sufficient evidence before it on which to base its finding that the affidavit contained no misrepresentations. *See State v. Buckingham*, 121 N.H. 339, 342, 430 A.2d 135, 137 (1981).

The defendant appeals the denial of his motion to suppress on another ground. He argues that his confession was obtained in violation of his right to counsel under the sixth and fourteenth amendments to the United States Constitution. He claims that his right to counsel attached when the complaint was signed even though the complaint was not filed in court until he made his initial court appearance, and that the State failed to prove that he waived his right to counsel before he confessed.

■■■ The right to counsel under the sixth and fourteenth amendments attaches only at or after the time that adversary judicial proceedings have been initiated against a defendant, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois*, 406 U.S. 682, 688–89 (1972). The United States Supreme Court set forth the reason why the right to counsel attaches at such a time:

> "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."

*Id.* at 689–90.

■■■ RSA 592-A:7 provides:

> "Criminal proceedings before a municipal court shall be begun by complaint, signed and under oath, addressed to such court, briefly setting forth, by name or description, the party accused and the offense with which he is charged."

It is unclear from the language of this provision whether criminal proceedings begin when the complaint is signed, or when the com-

plaint is filed with the court. We hold that adversary judicial proceedings are commenced by the *filing* of the complaint in court, and not merely by the signing of the complaint. Until a complaint is filed in court, the State is not committed to prosecute, and the defendant is not obligated to defend himself. Once the complaint is filed, the defendant is "faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby v. Illinois*, 406 U.S. at 689; *see Moore v. Illinois*, 434 U.S. 220, 228 (1977). Therefore, the defendant's right to counsel, guaranteed by the sixth and fourteenth amendments, had not attached at the time of his confession, and his confession was properly admitted at his trial. Of course, this in no way denigrates the situations when the fifth amendment triggers the right to counsel, *see Miranda v. Arizona*, 384 U.S. 436 (1966), or a procedure such as a lineup does so. *See United States v. Wade*, 388 U.S. 218 (1967).

Finally, the defendant argues that the trial court's refusal to permit the defendant to impeach the State's witness, Andrews, with his prior criminal convictions deprived him of his right to confront witnesses against him as guaranteed by the sixth amendment to the United States Constitution and part one, article fifteen of the New Hampshire Constitution.

The State contends that the defendant failed to properly preserve the matter for our review. While it concedes that the defendant objected and excepted to the court's ruling that no witness could be impeached with prior criminal convictions, it argues that the defendant was required to make an offer of proof indicating which witness he wanted to impeach, and the convictions he would use to impeach that witness.

We have held that evidence was properly excluded in cases in which a party fails to make an offer of proof to show the relevancy of the evidence offered. *See, e.g., Winslow v. Dietlin*, 100 N.H. 147, 149, 121 A.2d 573, 575 (1956); *Panagoulis v. Company*, 95 N.H. 524, 525, 68 A.2d 672, 673 (1949); *Ibey v. Ibey*, 94 N.H. 425, 427, 55 A.2d 872, 874 (1947). However, we have not required a party to make an offer of proof when the trial court has made a blanket ruling as to the admissibility of a class of evidence. *See, e.g., Samales v. Essie*, 94 N.H. 262, 263–64, 51 A.2d 639, 640 (1947); 1 WIGMORE ON EVIDENCE § 17(4), at 318 (3d ed. 1940). In the present case the trial court made clear that it would not permit *any* witness to be impeached with evidence of a prior criminal conviction. The defendant properly objected and excepted to this ruling. It was not

necessary that he make an offer of proof of the particular witness to be impeached and the conviction to be used for such impeachment.

The trial court's policy of refusing to permit *any* witness to be impeached with a prior criminal conviction constituted reversible error. We have previously held that the decision whether to permit a witness to be questioned about prior criminal convictions is within the discretion of the trial court. *State v. Ramos*, 121 N.H. 863, 866–67, 435 A.2d 1122, 1124 (1981); *State v. Mann*, 112 N.H. 412, 414–15, 297 A.2d 664, 666 (1972). Before the trial court could have decided whether to permit a witness to be impeached, it would have had to know which witness the defendant sought to impeach and of what crime the witness had been convicted. Instead, the court made clear that it had a policy of refusing to permit the introduction of prior criminal convictions. Such a policy is not a substitute for the exercise of discretion. When the trial court is given discretion, it must exercise it by properly balancing prejudice with probative value.

The defendant contends that he had an absolute right to cross-examine the State's witness, Andrews, about his prior criminal conviction. Although we have already determined that the trial judge's failure to exercise his discretion constituted reversible error, we will address the defendant's contention in order to provide guidance to the trial court on remand.

The sixth amendment to the Federal Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is guaranteed to defendants in State proceedings as well as in federal proceedings. *Pointer v. Texas*, 380 U.S. 400, 403–06 (1965). The primary interest guaranteed by the confrontation clause is the right to cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315 (1974).

In *Davis*, the defendant, who was charged with grand larceny and burglary, attempted to question a key prosecution witness about the witness' adjudication as a juvenile delinquent relating to a burglary, and about his probationary status at the time of trial. The trial court refused to permit this line of questioning. The United States Supreme Court held that the confrontation clause guaranteed the defendant the right to cross-examine the witness to determine possible bias due to the witness' probationary status as a juvenile delinquent, even though such impeachment conflicted with the State's interest in preserving the confidentiality of juvenile adjudications of delinquency. *Id.* at 319. The Court stated that the cross-examination permitted by the trial court was inadequate to develop the issue of bias. Noting that the witness was a key witness whose truthfulness

was critical, the Court stated that the defendant should have been permitted to cross-examine the witness concerning possible bias because it was necessary for the jury to evaluate the witness' testimony. *Id.* at 318.

In discussing the defendant's rights to cross-examine witnesses, the Court said:

> "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness."

*Id.* at 316.

Justice Stewart stated in his concurring opinion: "In joining the Court's opinion, I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past . . . criminal convictions." *Id.* at 321 (Stewart, J., concurring).

Since *Davis*, courts have differed in their interpretation of whether *Davis* requires courts to permit defendants to cross-examine witnesses about their prior criminal convictions when only the general credibility of the witness is being impeached. Several courts have stated that *Davis* only requires that the defendant be permitted to impeach a witness with prior criminal convictions if the conviction would suggest bias. They hold that if the conviction is only being used to impeach general credibility, the use of prior criminal convictions may be limited by judicial discretion. *See, e.g.*, *Mills v. Estelle*, 552 F.2d 119, 122–23 (5th Cir.), *cert. denied*, 434 U.S. 871 (1977); *Smith v. United States*, 392 A.2d 990, 991–93 (D.C. 1978); *State v. Russell*, 625 S.W.2d 138, 141–42 (Mo. 1981); *Bilbrey v. State*, 594 S.W.2d 754, 756–58 (Tex. Crim. App. 1980). These courts cite Justice Stewart's concurrence in *Davis* for the distinction between bias and general credibility.

Other courts do not distinguish between bias and general credibility. They hold that the confrontation clause *may* require a trial court to permit the defendant to impeach a witness' general credibility in certain circumstances. *State v. Conroy*, 131 Ariz. 528, 531, 642 P.2d 873, 876 (Ariz. Ct. App. 1982); *State v. Hillard*, 398 So. 2d 1057, 1060 (La. 1981). These courts emphasize the language of the United States Supreme Court in *Davis* that the denial of effective cross-examination constitutes error, that the cross-examiner has traditionally been allowed to impeach a witness, and that one method of impeachment is the introduction of prior criminal convictions. In *Conroy*, the Arizona Court of Appeals stated that the test for whether the defendant had been denied his right to confront a witness is "whether the defendant has been denied the opportunity of presenting to the trier of fact information which bears either on the issues in the case or on the credibility of the witness." 131 Ariz. at 531, 642 P.2d at 876 (quoting *State v. Fleming*, 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977)). The court held that the defendant had been denied his confrontation right because the witness that the defendant had attempted to cross-examine was a principal State's witness and was the only adult to tie the defendant to the crime of child-molesting. Consequently, the credibility of the witness was extremely important.

In *Hillard*, the Louisiana Supreme Court held that the defendant was denied his right to confront witnesses when the trial court refused to permit cross-examination of a witness about prior criminal convictions. The Louisiana court reasoned that the witness was crucial to the State's case and noted that the trial court did not examine the juvenile's record to determine if it would have aided the defendant in impeaching the witness' credibility. The court stated that a denial of the confrontation right occurs if the defendant is prevented from employing a means of impeachment that would be effective in his particular case, and the evidence is necessary for a fair determination of the defendant's guilt or innocence. *State v. Hillard*, 398 So. 2d at 1061.

Neither *Conroy* nor *Hillard* established an absolute rule that a court must permit a defendant to impeach the general credibility of a witness with a prior criminal conviction. Both courts recognized that, in cases when credibility is especially important, it may be a denial of the defendant's confrontation right to refuse to permit him to impeach an important State witness with his prior criminal conviction.

We have indicated that cross-examination is fundamental, and that a trial court may not completely deny a defendant the right

to cross-examine a witness on a proper matter of inquiry. *State v. Ramos*, 121 N.H. 863, 866–67, 435 A.2d 1122, 1124 (1981). In *Ramos*, we held that the trial court erred when it refused to permit the defendant to cross-examine a police officer about his familiarity with police department standards in order to show that the officer's failure to comply with the procedures provided him with a motive to testify falsely. We held that a determination of the officer's motives was a proper matter of inquiry. *Id.* at 867, 435 A.2d at 1124.

██ *Ramos* is analogous to *Davis* because the defendant was attempting to prove motive or bias. Although we have never addressed the question whether a defendant has a right to impeach a witness' general credibility, our reading of *Davis* does not indicate that it is limited solely to bias. Even though the *Davis* Court was concerned in particular with exposing the bias of a State witness, it indicated that impeachment of the general credibility of a witness has traditionally been allowed, and it was generally concerned with the adequacy of cross-examination. For these reasons, we have decided to adopt the rule endorsed by the Arizona and Louisiana courts.

 Cross-examination may be inadequate, not only because the trial court refuses to permit the defendant to attempt to expose the bias of the witness, but also because, in cases in which credibility is particularly important, the trial court refuses to permit the defendant to impeach the witness' general credibility. While this rule may make it more difficult for the trial court to determine when it must permit the defendant to impeach the general credibility of the witness (as opposed to a rule limiting it to cases of bias), we hold that *Davis* requires such a rule. Therefore, on remand, in determining whether the defendant should be permitted to impeach the general credibility of a witness with evidence of a prior criminal conviction, the court should consider whom the defendant wishes to impeach, the importance of that witness' testimony, and whether there is sufficient independent evidence of guilt so that credibility of that witness is not of a constitutional dimension.

Because we remand for a new trial, we find it unnecessary to determine whether the trial court should have declared a mistrial when a prosecution witness testified that the defendant had stated that he met his alleged co-conspirators, John Settle, Jr., and Joey Lee Taylor, in jail while serving a sentence. We also find it unneces-

sary to determine whether the trial court should have granted a mistrial because the State furnished misleading discovery.

*Affirmed in part; reversed in part; remanded.*

All concurred.