Rockingham
No. 6118

STATE OF NEW HAMPSHIRE v. JACK W. MOREAU

STATE OF NEW HAMPSHIRE v. ARTHUR W. MOREAU

June 29, 1973

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general (*Mr. Hess* orally), for the State.

*James H. Dineen* (of Maine), and *Myron D. Rust* (*Mr. Dineen* orally), for the defendants.

KENISON, C.J. The issues in this search and seizure case are whether there was probable cause for the issuance of the search warrant and whether the scope of the search was impermissibly broad. After an exclusionary hearing before the superior court, at which the only witness was Lieutenant Inspector William Mortimer of the Portsmouth Police Department, defendants made a motion to suppress the marijuana, heroin, amphetamine, and a pistol obtained by the police during the search. The motion was denied by the Court (*Grant,* J.), and the defendants consented to the entry of guilty findings subject to a consolidation of their cases and a review in this court of the validity of the warrant and the legality of the search.

The defendants are brothers who resided in separate rooms

in a building owned and occupied by their mother in Portsmouth, New Hampshire. Jack resided in a basement room, and Arthur's bedroom was part of the general living quarters on the main floor. The search warrant was obtained by Lieutenant Mortimer from District Court Judge Samuel Levy on January 5, 1970, upon the strength of an affidavit and oral statement of Mortimer relating his knowledge of a sale of marijuana to a police informant by Jack Moreau at the Moreau residence, and certain additional facts. The warrant specified as the place to be searched "the living quarters of Lenora M. Moreau and Jack Moreau within the two and a half story frame building situate at said 259 Maplewood Avenue, occupied by said Lenora and Jack Moreau." Two to three hours after the warrant was issued, Mortimer and several other officers searched each of the rooms of the Moreau residence, locating marijuana, amphetamines and a pistol in Jack's bedroom and heroin and marijuana in Arthur's bedroom.

The defendants' primary contention is that the search warrant was issued without probable cause because it was based almost solely upon the actions and information of an unreliable informant. They point to the fact that there were federal drug charges pending against the informant, Paul E. White, and conclude that he might well have had a motive to falsify his information in order to obtain a favorable disposition of his own case. We first note that we can locate no evidence in the record that anyone agreed to drop any charges against White in exchange for his help as an informant, as asserted by the defendants. *See* Supreme Court Rule 4, specifying that "briefs should contain accurate page citations to the pertinent portions of the transcript" supporting material statements of fact. RSA 490:App. R 4 (Supp. 1972). Lieutenant Mortimer testified in this regard that he had merely agreed to write a letter in White's behalf to the federal authorities indicating his assistance and regardless of the outcome of the Moreau case.

The informant implicated himself in telling Mortimer, as related in the affidavit, that his awareness of drug sale activities at the Moreau residence stemmed from his own purchase of marijuana from Jack Moreau prior to becoming

an informer. The United States Supreme Court has recently sustained from a lack of probable cause attack a similar affidavit which was also based upon the representations of a first-time informer of doubtful character: "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." *United States v. Harris,* 403 U.S. 573, 583-84, 29 L. Ed. 2d 723, 734, 91 S. Ct. 2075, 2082 (1971); *accord, State v. Appleton,* 297 A.2d 363 (Me. 1972); W. Ringel, Searches & Seizure, Arrests and Confessions § 337.01 (1972), citing 5 J. Wigmore, Evidence § 1457, at 262-63 (3d ed. 1940).

In addition to White's purchase of marijuana at the Moreau residence on November 28, 1969, prior to his enlistment as an informer, the affidavit recites that White made a second marijuana purchase — as an informer — on December 18. On this occasion White was taken to a room in the Moreau house where he saw "plastic bags containing marijuana, plastic bags containing a white substance and various and sundry clear plastic vials containing various pills and tablets," as stated in Mortimer's affidavit. The affidavit further recites that White turned over to Mortimer the marijuana purchased at the Moreau house which was analyzed to be marijuana; that another party, one Alexander Berry, told White that Jack Moreau and Berry "were in the business of selling marijuana and other 'dangerous narcotic drugs' together;" that White attempted to make another purchase at the Moreau residence on January 2, 1970, but was told by Berry "that he and Moreau were only selling to three people;" that White was thereupon taken by Berry to another location where White purchased another bag of marijuana; and that Jack Moreau on one occasion informed Lieutenant Mortimer that he was a user of marijuana and "speed". Mortimer testified that he also verbally informed Judge Levy of certain other information prior to the issuance of the warrant, including White's "legal difficulties" in connection with his own

possession of marijuana, that the December 18 purchase had been made from Jack in a basement room of the Moreau premises, and that Arthur Moreau was believed to have sold LSD to an individual on a prior occasion. Mortimer also told Judge Levy that he had "surveilled" White and had seen him enter and depart from the Moreau residence and that he had personally corroborated certain other specified incidentals to White's story and was satisfied with its veracity.

"Under our practice, the evidence relied upon by an officer or magistrate to justify the issuance of the search warrant is not required to be fully contained in the complaint upon which the warrant is issued. . . . The issue of probable cause in such a case, may be determined on the basis of all the evidence presented to the magistrate." *State v. Titus,* 106 N.H. 219, 222, 212 A.2d 458, 460 (1965); *accord, State v. Salsman,* 112 N.H. 138, 290 A.2d 618 (1972); *see United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971). The judge issuing the warrant in this case was thus "informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable'." *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514 (1964); *accord, United States v. Harris supra; see Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

The defendants also contend that the time lag between the last sale of narcotics at the Moreau premises on December 18, 1969, and the issuance of the warrant on January 5, 1970, was too long to support a valid warrant. While the only case cited by the defendants on this point involved a lag of some three and a half months, as compared with the eighteen-day lag here, we agree that the probable cause springing from specific facts diminishes with the passage of time. "Facts other than the mere single sale," however, "may be presented in the affidavit to establish the probable continuing presence of contraband in the place to be searched allowing for a longer period of time between the observation of the facts and the time of the making of the affidavit." *State v. Appleton,* 297 A.2d 363, 370 (Me. 1972). In this case the

affidavit states that Alexander Berry, Jack Moreau's associate in the previous sales, made statements to White on January 2, 1970, indicating that they both were still selling narcotics, albeit to a limited number of persons. Thus, this case presents in fact only a three-day delay which in the context of these facts is not unreasonably long. We hold that the warrant and resulting search were supported by probable cause.

Defendants' final contention is that the scope of the actual search, including particularly the bedrooms of both defendants, was broader than authorized under the warrant which specified "the living quarters of Leonora M. Moreau and Jack Moreau within the two and a half story frame building . . . occupied by Leonora and Jack Moreau." Jack's contention is that his basement room was not part of the two and a half stories and so was not indicated by the description on the warrant. To be sure search warrants must describe with particularity the area to be searched and the things to be seized. U.S. Const. amend. IV; N.H. Const. pt. 1, art. 19; e.g., Marron v. United States, 275 U.S. 192, 72 L. Ed. 231, 48 S. Ct. 74 (1927); Steele v. United States No. 1, 267 U.S. 498, 69 L. Ed. 757, 45 S. Ct. 414 (1925); cf. State v. Bradbury, 109 N.H. 105, 243 A.2d 302 (1968). "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." 267 U.S. at 503, 69 L. Ed. at 760, 45 S. Ct. at 416; accord, State v. Costakos, 101 R.I. 692, 226 A.2d 695 (1967); People v. Estrada, 234 Cal. App. 2d 136, 44 Cal. Rptr. 165 (1965). "A description which identifies with reasonable certainty the place or places to be searched is sufficient." Metcalf v. Weed, 66 N.H. 176, 177, 19 A. 1091 (1889). The police were not confused that Jack's bedroom was theoretically "under" rather than "within" the house. Jack's room was described in the warrant with reasonable certainty and the evidence seized therein by the police was legally obtained under the warrant.

Arthur's contention is that his bedroom was unlawfully searched since it was not specifically mentioned in the warrant which specified only the living quarters of his mother and brother. Lieutenant Mortimer testified that the area was so described in the warrant because he was aware that other

persons resided in apartments at the same address and that the need for a search was indicated only in the Moreau family portions of the building. A search warrant directing the search of a multi-occupancy building must particularly describe the specific living units to be searched. *E.g., State v. Costakos,* 101 R.I. 692, 226 A.2d 695 (1967); *People v. Estrada,* 234 Cal. App. 2d 136, 44 Cal. Rptr. 165 (1965). The evidence does not show that Arthur's bedroom was a separate living unit from the living quarters of his mother. The fact that he paid rent to his mother is insufficient by itself to establish the separateness of his bedroom from the rest of the mother's living quarters. *People v. Gorg,* 157 Cal. App. 2d 515, 321 P.2d 143 (1958); *Gill v. State,* 71 Okla. Crim. 247, 110 P.2d 926 (1941). When "only one 'place' is described . . . the warrant is sufficient where, at a single street address, the occupants reside as one family, even though rooms are rented and the tenants of such rooms are not, under the circumstances, shown to be keeping separate establishments within the home of said occupants." *Id.* at 251, 110 P.2d at 928. The sparse evidence in the record pertinent to this point indicates that Arthur's bedroom was part of the family living quarters generally under the control of the mother and authorized to be searched. *Robertson v. State,* 188 Tenn. 471, 221 S.W.2d 520 (1949). Under these circumstances, the search of Arthur's room was authorized by the search warrant, and the evidence seized therein was validly obtained.

We conclude that the warrant was issued upon probable cause and that the search did not exceed the scope of the warrant. Defendants' motion to suppress the evidence obtained in the search was therefore properly denied.

*Exceptions overruled; remanded.*

All concurred.