Rockingham
No. 83-293

THE STATE OF NEW HAMPSHIRE

v.

JAMES F. ANDREWS

July 3, 1984

*Gregory H. Smith*, attorney general (*Paul Barbadoro*, assistant attorney general, on the brief and orally), for the State.

*Denner & Benjoya*, of Boston, Massachusetts, and *Follender, Connors & Wacks*, of Nashua (*Jeffrey Denner* and *Mark G. Connors* on the brief, and *Leight D. Collins* orally), for the defendant.

BROCK, J.   The defendant, James F. Andrews, appeals the denial of his motions to suppress evidence obtained from a wiretap of his home telephone and a subsequent search of his home and truck. We affirm.

The defendant was arrested and indicted for possession with intent to distribute and conspiracy to distribute controlled drugs in violation of RSA chapter 318-B (Supp. 1981), following a search of his home and truck on January 22, 1982. The search, which uncovered ninety pounds of marijuana, and cocaine in excess of nine ounces, was the culmination of a four-month police investigation that had included the use of a wiretap. Before trial, the defendant moved to suppress the evidence resulting from the wiretap and the search. These motions were denied by the Superior Court (*Bean*, J.).

The defendant then pleaded not guilty and waived a jury trial. He agreed to submit his case to the trial court for a determination of guilt or innocence on the basis of an agreed statement of facts. The defendant was found guilty and sentenced to not less than six-and-one-half nor more than fifteen years at the New Hampshire State Prison. Having excepted to the trial court's rulings denying his motions to suppress, the defendant appeals those rulings to this court.

I. *The Wiretap*

A. *Probable Cause*

The defendant first argues that the wiretap order was not supported by probable cause. He contends that the affidavit in support of the State's application for a wiretap contained, to a large extent, stale information and omitted any basis for determining the reliabil-

ity of the information and the credibility of some of the informants mentioned in the affidavit.

The defendant's staleness argument derives from the following facts, as presented in the affidavit that accompanied the application for the wiretap. In September 1981, an unnamed informant, who had no criminal record and was not under arrest at the time, met with a corporal of the New Hampshire State Police. This informant related personal observations of drug transactions over a three-year period prior to May 1980 between the defendant Andrews, who had been previously convicted for transporting a controlled drug with intent to sell, and an individual named Green. The informant stated that the drug transactions typically would begin with a telephone call from Green to Andrews to inquire about the availability of marijuana and cocaine. Green would then travel to Andrews' home. The defendant would leave his home temporarily and return in approximately thirty minutes with the quantity of drugs requested by Green. The informant further stated that the use of the telephone was an integral part of Andrews' illicit drug business. The informant had also observed Green sell marijuana and was told by Green that Andrews was Green's primary supplier of drugs. The informant also stated that "it" had had no contact with the defendant or Green since May 1980.

■ Had the wiretap application, dated January 13, 1982, been sought on the basis of this information alone, the defendant's staleness argument would indeed be persuasive. However, we cannot agree with the defendant's contention that no current information was provided whatsoever. The twelve-page affidavit submitted by the corporal described the police investigation subsequent to September 1981, which sought to determine whether the activity described by the informant was presently occurring. This investigation included: (1) an analysis of the defendant's telephone toll records for a nine-month period from January through September 1981 and an analysis of information derived from the court-authorized use of a pen register for three separate ten-day periods in October, November, and December 1981—these analyses revealed numerous calls to numbers listed for Green and for individuals residing in Maine, New Hampshire, and Massachusetts, who had previous convictions for the possession, sale, or possession with intent to distribute controlled drugs; (2) surveillance which followed the defendant over a course of two hundred miles from his home to the residence of one of these individuals, with a brief interim stop at the residence of a second of these individuals; and (3) surveillance of the defendant's home which revealed that Green was there on sev-

eral occasions in November 1981 and that vehicles registered to some of the other individuals had been observed there in October and November 1981 and as recently as January 7, 1982.

The defendant also argues that the wiretap application failed to present any circumstances which would show the informant's credibility and the reliability of "its" information. The substance of the defendant's argument is that the affidavit impermissibly uses another informant, whose credibility and reliability is unsubstantiated, to bolster the credibility of the first informant and the reliability of the information provided by that informant. Specifically, the defendant refers to a statement by informant number two, contained in the affidavit, made while that second informant was under arrest for possession of marijuana and cocaine, that Green was informant number two's source of drugs. This independent statement made by informant number two did corroborate informant number one's description of Green as a drug dealer and thus may provide some basis for crediting the veracity of informant number one. *See United States v. Hyde*, 574 F.2d 856, 862–63 (5th Cir. 1978) (the reliability of confidential informants may be inferred from mutually reinforcing and corroborative information supplied by independent informants, even though the reliability of the individual sources is not established); *see also State v. Gilson*, 116 N.H. 230, 233, 356 A.2d 689, 691 (1976).

■ More significantly, the affidavit does not rely solely on statements of other informers, even assuming *arguendo* that the reliability and credibility of these other informers is unsubstantiated. Independent police corroboration has always been a significant factor in determining the existence of probable cause. *See Illinois v. Gates*, 103 S. Ct. 2317, 2334 (1983); *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) (affidavit only related that reliable information had been received from credible person; if the facts and results of a police surveillance had been brought to magistrate's attention, an "entirely different case" would have been presented); *State v. Mandravelis*, 114 N.H. 634, 637–38, 325 A.2d 794, 796 (1974).

■■ In the case at bar, the telephone toll and pen register records, plus the police surveillance, corroborated the contact between the defendant and Green, contact that was both in person and via the telephone. The corroboration of some information provided by an informant deserves weight in assessing that informant's credibility and the reliability of the information provided. *State v. Thorp*, 116 N.H. 303, 307, 358 A.2d 655, 659 (1976).

The police investigation revealed not only that this contact was current, but also that Andrews had frequent contact with several

other individuals who had been identified as having prior drug convictions. The defendant argues that this information, relating to activity after May 1980, when the personal observations of the informant had ceased, proves only that the defendant had engaged in innocent and innocuous activity, which is insufficient to support probable cause at the time of the wiretap application. We disagree. Seemingly innocent behavior can provide the basis for a showing of probable cause. *Illinois v. Gates*, 103 S. Ct. at 2335 n.13.

Moreover, the activity revealed by the police investigation cannot so conclusively be deemed innocent, as suggested by the defendant. Given the affiant's knowledge, experience and training in the detection of illegal drug trafficking, which was outlined in the affidavit, a reasonable person could conclude that the activity uncovered by the police investigation was part of a pattern of a current and continuing illicit drug business, involving the telephone as a means of contacting others in a larger network of drug distribution. *See id.* at 2348 (White, J., concurring). The observations of trained police officers and their ability to interpret them are relevant to a determination of probable cause. *State v. Maxfield*, 121 N.H. 103, 106, 427 A.2d 12, 14 (1981); *see also United States v. Cortez*, 449 U.S. 411, 419 (1981).

In conclusion, we note that the passage of time is but one factor in determining the existence of probable cause. *State v. Marcotte*, 123 N.H. 245, 248, 459 A.2d 278, 280 (1983). Although "probable cause springing from specific facts diminishes with the passage of time," *State v. Moreau*, 113 N.H. 303, 307, 306 A.2d 764, 767 (1973), other current facts may be presented in the affidavit to establish the probable continuing occurrence of criminal activity sustaining information that would otherwise be characterized as stale. *See id.* Probable cause is not an adjudication of guilt and does not require a conclusive finding of criminal activity. *State v. Thorp*, 116 N.H. at 306-07, 358 A.2d at 658-59. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 103 S. Ct. at 2335 n.13; *see State v. Thorp*, 116 N.H. at 306-07, 358 A.2d at 658-59. A reasonable and prudent person in the position of the issuing magistrate could believe on the basis of the affidavit that an offense was being committed by means of that telephone during the period subsequent to September 1981 so as to refute any allegation of staleness. We further conclude that the information disclosed by the informant was sufficiently corroborated so as to provide the issuing magistrate with a basis for crediting the informant and the reliability of the information and that the wiretap application, when considered as a

whole, established probable cause. *See State v. Maxfield*, 121 N.H. at 106, 427 A.2d at 14; *State v. Thorp*, 116 N.H. at 307–08, 358 A.2d at 659; *State v. Mandravelis*, 114 N.H. at 637–38, 325 A.2d at 796; *State v. Lee*, 113 N.H. 313, 317–18, 307 A.2d 827, 830 (1973).

B. *The Statutory Requirements of RSA Chapter 570-A*

RSA chapter 570-A is New Hampshire's wiretap statute regulating the use of wiretapping and electronic eavesdropping devices for law enforcement purposes. *State v. Lee*, 113 N.H. at 315–16, 307 A.2d at 828–29. RSA 570-A:9, V states in pertinent part: "Every order [authorizing or approving the interception of a wire or oral communication] and extension thereof shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . . ." The defendant contends that both the court order itself and the manner in which the order was executed violated this statutory requirement of minimization.

The defendant argues first that the State police knew the parties to, and the extent of, the alleged conspiracy prior to the application for the wiretap, and that this information was presented to the issuing magistrate. Therefore, according to the defendant, the judge, in his order, should have restricted the interception to incoming and outgoing calls of specific numbers already obtained through the use of the pen register. Such a restriction was not required in this case. Although we have concluded that the application for the wiretap sufficiently established probable cause to believe that Andrews was part of an illicit drug distribution network, the application also supports the conclusion that the police investigation, contrary to the defendant's assertion, had not established the boundaries of this network and had not encompassed within any boundary all of the network's members. The goal of the wiretap was, as stated in the corporal's affidavit, "to delineate the contours of the conspiracy between Andrews and others known and yet unknown." In the context of this case, the failure to restrict the interception to particular numbers was not improper.

Andrews also argues that the officers, in executing the wiretap, failed to properly minimize the interception. Out of 207 calls that were intercepted over nine days, 3 calls were "minimized," 58 calls were incriminating, and 145 calls were non-pertinent. We have previously concluded that the proper test for minimization is "reasonableness under the facts and circumstances of each case." *State v. Moccia*, 119 N.H. 169, 172, 400 A.2d 44, 46 (1979); *see also*

*Scott v. United States*, 436 U.S. 128, 140 (1978). The facts and circumstances of the present case are very similar to those in *State v. Moccia*. As in *Moccia*, the police in the present case were investigating an apparently large-scale drug conspiracy whose members used code language, the terms of which made it difficult to identify immediately those calls that were inquiries into Andrews' legitimate business interests as a lobster dealer. Thus, it was difficult for the officers to develop a pattern of innocent calls that would clearly require minimization. *See Scott v. United States*, 436 U.S. at 141–42; *State v. Moccia*, 119 N.H. at 172, 400 A.2d at 47. In addition, the wiretap, in the case at bar, was of a relatively short duration—nine days—and was for too brief a period for such a pattern to develop. *State v. Moccia*, 119 N.H. at 172, 400 A.2d at 47. We hold that the minimization was reasonable under the standards enunciated in *State v. Moccia*.

Andrews next argues that the application for the wiretap failed to show that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." RSA 570-A:9, III(c). This argument is without merit. The affidavit in support of the application describes the four-month police investigation, involving pen registers, telephone toll analysis, and surveillance, which, although establishing probable cause for issuance of a wiretap order, could not establish the amount of evidence necessary to conclusively demonstrate the criminal culpability of the members of the drug conspiracy.

The affidavit also asserts that continued surveillance of Andrews' home was likely to be detected by Andrews' neighbors and that, because the defendant was well acquainted with several of his neighbors, the investigation could more than likely be compromised. Further, the affidavit points out the difficulty in attempting to infiltrate the conspiracy. The key informant had had no contact with Andrews since May 1980. Subsequent to that time, Andrews had moved and received a new unpublished telephone number. It would have been suspicious for this informant, having no legitimate access to the new number, to contact Andrews to discuss drug dealings after so long a passage of time. Without a legitimate contact with the conspirators, the successful introduction of a State police undercover agent to the group was unlikely. We conclude that the requirements of RSA 570-A:9, III(c) were satisfied. *See State v. Rowman*, 116 N.H. 41, 44, 352 A.2d 737, 739 (1976).

II. *The Search of the Defendant's Residence and Truck*

The defendant first argues that the evidence obtained as a result of the January 22, 1982, search of his home and truck must be sup-

pressed because the affidavit in support of the search warrant application relied on information obtained from an illegal wiretap. This argument is moot in light of our conclusion that the wiretap authorization was valid.

Aside from his "fruit of the poisonous tree" argument, *see Wong Sun v. United States*, 371 U.S. 471 (1963), the defendant also contends that the affidavit in support of the search warrant application contained merely the affiant's conclusory allegations without stating any underlying facts, and thus failed to provide the magistrate with a basis for determining the existence of probable cause. The affidavit describes the ongoing investigation of the defendant Andrews, including the surveillance and the wiretap. In describing the results of the wiretap, the affidavit states, in part:

> "The contents of these telephone calls indicate a large scale conspiracy to sell, possess, and distribute controlled drugs such as marijuana and cocaine, between James F. Andrews, Terri Andrews, James McCloy, Gordon Clark, Tim West, Douglas Sartwell, Dave LNU, and others yet unknown."

Because the intercepted telephone calls never mentioned controlled substances directly, the defendant suggests that the affiant was required to report that the statement was *his* interpretation of the telephone calls and to include actual excerpts of the intercepted calls so that the magistrate could determine for himself whether the calls, in fact, indicated an illicit drug conspiracy.

Although the defendant's argument is not without some support, *see State v. Moccia*, 119 N.H. at 174, 400 A.2d at 47–48, we conclude that the issuing magistrate, in the case before us, had a sufficient factual basis upon which to determine probable cause. The affiant's allegation that the alleged participants were referring to drugs was corroborated by the seizure earlier on that day, January 22, 1982, of approximately fifteen hundred pounds of marijuana from the truck of James McCloy, a suspected co-conspirator. This seizure occurred after and as a result of an intercepted communication between Andrews and McCloy which, to the affiant, indicated that McCloy would go to Massachusetts to pick up approximately one thousand pounds of marijuana and return to his residence in Maine to store and distribute the marijuana. McCloy was followed to Massachusetts and was stopped when he re-entered New Hampshire. His truck was searched and was found to contain approximately fifteen hundred pounds of marijuana.

██  All of this information, regarding the telephone calls between Andrews and McCloy and the search of McCloy's truck, was in the affidavit before the magistrate. This information provided corroboration for the affiant's interpretation of the telephone calls and adequately documented the link between McCloy and Andrews. We conclude that the affidavit demonstrated probable cause to support the issuance of the search warrant.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.