Strafford
Rockingham
No. 83-224

THE STATE OF NEW HAMPSHIRE

v.

CLIFFORD DOYLE & a.

February 22, 1985

154

*Gregory H. Smith*, attorney general (*John A. Malmberg*, assistant attorney general, on the brief and orally), for the State.

*Alfred J. Catalfo, Jr.*, of Dover, by brief and orally, for the defendant Clifford Doyle.

*Bernard J. Robertson*, of Exeter, for the defendant Peter Poolitsan, joined in the brief of Clifford Doyle.

*Charles F. Dalton, Jr.*, of Andover, Massachusetts, by brief and orally, for the defendant Daniel Peters.

*Joanne S. Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant Debbie Poolitsan.

*Craig F. Evans*, of Durham, and *Stephen A. White*, of Dover (*Mr. Evans* and *Mr. White* on the brief, and *Mr. Evans* orally), for the defendants Sandra Varagianis and Angelo Varagianis.

KING, C.J.   In September and October of 1981, grand juries in Rockingham and Strafford Counties returned indictments against the defendants and others for violations of the Controlled Drug Act, RSA chapter 318-B. These charges arose out of a State police investigation, conducted in part by the use of wiretaps. The defendants moved to suppress the evidence obtained against them by means of the wiretaps.

The superior court consolidated the cases for a suppression hearing, which was specially scheduled for January 24, 1983, in Strafford County. Following the four-day hearing, the Trial Court (*Dunn, J.*) ordered the wiretap evidence suppressed.

On August 17, 1983, we accepted the State's interlocutory appeal filed pursuant to RSA 570-A:9, IX(b). We reverse and vacate the order to suppress and remand to the trial court for consideration of the issues raised but undecided at the suppression hearing.

In 1980, the New Hampshire State Police began investigating the activities of Angelo Varagianis, whom the police had suspected of dealing in drugs in the seacoast area. The police conducted intermittent surveillance of his home and of his business, a body-building and health spa center known as The Body Shop. When neither the surveillance nor the efforts of a confidential informant to purchase drugs from Varagianis' wife, Sandra, were successful, the State police turned their attention to Varagianis' use of the telephone.

Telephone toll records for both the Varagianis' home and The Body Shop were examined. In the spring of 1981, the superior court authorized the installation of a "pen register" on both of these telephones. Based on an analysis of the toll records and pen registers, as well as other information, the State, on June 26, 1981, applied for and was granted the authority to tap the telephone at the Varagianis' home, pursuant to RSA 570-A:7.

Information obtained from the Varagianis' wiretap and other investigative sources led to an application for an order authorizing a wiretap on the home telephone of Peter Poolitsan. The authorization

was granted on July 29, 1981, and was extended by a subsequent court order on August 8, 1981.

Following indictments in Strafford and Rockingham Counties, the defendants filed motions to suppress challenging all of the wiretap orders on a number of grounds, including misstatements in the affidavit supporting the initial application for an order to tap the Varagianis' telephone. The superior court ruled that the initial affidavit could not support a finding of probable cause because New Hampshire State Police Corporal Henry Carpenito had made reckless misstatements in preparing the affidavit. The court declined to consider whether the affidavit, absent the misstatements, would support a finding of probable cause. The court accordingly ordered suppression of the evidentiary fruits of the Varagianis' wiretap. *See State v. Chaisson*, 125 N.H. 810, 486 A.2d 297 (1984).

The State objects to the trial court's decision to suppress on two grounds: (1) the trial court erred when it found that the misstatements in the supporting affidavit were made recklessly; and (2), even if the errors were made recklessly, the court erred when it refused to excise the erroneous statements and then to test for probable cause.

The defendants claim that the wiretap violated their rights under both the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. We first address the claims under the State Constitution. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 352 (1983).

■■ Whether an affiant recklessly misrepresented facts in an affidavit is a question of fact for the trial court. *State v. Chaisson*, 123 N.H. 17, 27–28, 458 A.2d 95, 101 (1983). We will not disturb the trial court's finding unless it is unreasonable or unsupported by the evidence.

■ A statement in an affidavit is recklessly made as a matter of law only if the affiant had no reasonable grounds for believing the truth of the facts attested to. *State v. Renfrew*, 122 N.H. 308, 311, 444 A.2d 527, 529 (1982); *State v. Spero*, 117 N.H. 199, 205, 371 A.2d 1155, 1159 (1977). We must therefore determine whether the trial court could reasonably find that Officer Carpenito lacked a reasonable basis for believing his misstatements in the twelve-page affidavit which supported the motion for the warrant for a wiretap on the Varagianis' telephone.

We now review each of the seven errors found by the trial court, as well as the explanation for those errors given by Officer Carpenito at the suppression hearing.

First, the affidavit at paragraph 9(c) stated that Charles Boyle was convicted of possession of a controlled drug in 1979. He was actually convicted in 1973. All other facts about this conviction, including the month, day, court and charge were correct.

Second, paragraph 9(e) of the affidavit stated that a confidential informant "conducted drug transactions with Bruce Viel," at Rochester Car Care. The word "transactions" should have been expressed in the singular rather than the plural, since the informant conducted only one transaction, although the informant was aware of other drug transactions of Mr. Viel.

Third, paragraph 8 of the affidavit reported that "a total of 424 telephone calls were recorded during the ten-day period for which the pen registers were authorized." The word "period" should have been "periods," because each of the two pen registers ran for a different ten-day period. The preceding paragraph, however, plainly stated that the two pen registers had been authorized at different times.

Fourth, paragraph 2 of the affidavit alleged that "Angelo Varagianis was convicted of possession of a narcotic drug on March 8, 1968, in Strafford County Superior Court." The superior court records showed that the possession charge was nolle prossed on the same day that the defendant pled guilty to an information charging him with being knowingly in the presence of a controlled drug.

Officer Carpenito testified that the statement in his affidavit was based on State police records on Angelo Varagianis which had two entries for March 8, 1968, one showing a guilty plea for possession of narcotics and the other showing the same charge being nolle prossed. He testified that he had interpreted the records to mean that Varagianis had pled guilty to one of two charges and that the other was dropped. He also testified that the State police records are based on information received from courts throughout the State and that he regularly relies on them when analyzing telephone pen register records.

Fifth, the affidavit at paragraph 9(a) asserted that Sharon Doyle was "arrested" with her husband, Clifford, at Logan Airport in 1971 for possession of four-and-one-half pounds of marijuana. The affidavit also indicated that, "[t]hese arrests were nolle prossed." Sharon Doyle testified that she was not arrested at Logan Airport, but was questioned by customs officers at the airport and then taken to the federal building in Boston for questioning by the United States Attorney's Office.

According to his testimony, Officer Carpenito's statement that the Doyles were arrested was based on a telephone conversation he had

with a customs agent, Thomas Murphy, who told him that the customs records indicated that the Doyles had been arrested at Logan Airport.

Sixth, in describing Ralph Palumbo, the affidavit stated that a confidential informant "stated that Ralph Palumbo . . . was a major dealer of cocaine in Maine and New Hampshire." The trial court characterized this statement as an error, because it "implies that the . . . informant had personal knowledge of Palumbo's dealings."

On cross-examination, Officer Carpenito testified that the confidential informant had learned of Palumbo's drug dealing from a Mr. Walker and that Officer Carpenito had taken steps to verify Walker's knowledge of the status of Palumbo.

Seventh, the trial court also regarded as erroneous the statement in the affidavit that, "Sergeant Presby observed Sandra Varagianis deliver this marijuana to Bruce Viel." The court acknowledged that Sergeant Presby was on the premises at the time of the transaction, but stated that "he did not actually witness the delivery." Presby testified, however,

> "I saw a brown pickup truck go by, and I recognized that truck as belonging to Angelo Varagianis. The truck went into the Car Care yard and a short time later, maybe twenty minutes or so, the informant drove out and I followed the informant to Portsmouth, where he produced a pound of marijuana and said that he had purchased it from Bruce Viel and also said the marijuana had been given directly to Bruce Viel just before he got it by Sandra Varagianis, who, it turned out, was in the brown pickup truck."

Trooper James Nims, who was stationed on the other side of Rochester Car Care during the transaction, corroborated Sergeant Presby's testimony. He testified "I observed a brown pickup truck pull in, operated by what appeared to be a white female with lightish hair. I observed another person go up to the side. There was conversation. A paper bag was passed through the window to a male subject. The male subject took the parcel and went into the building."

We will uphold the trial court's finding that Officer Carpenito acted recklessly when he prepared the affidavit, unless we find the ruling to be unreasonable or not supported by sufficient evidence. *See State v. Chaisson*, 123 N.H. 17, 27–28, 458 A.2d 95, 101 (1983). The trial court made two points to support its finding that Officer Carpenito acted recklessly: (1) Officer Carpenito's reliance on State police records to determine Angelo Varagianis' criminal record was

reckless, in light of his knowledge that these records had been wrong in the past; and (2) the fact that all seven of the errors "enhance[d] a finding of probable cause, indicated that the errors were not merely negligent."

As to the reasonableness of Officer Carpenito's reliance upon police records, RSA 106-B:14 provides for the director of the State police to compile criminal records of all persons convicted of felonies or placed under arrest in criminal proceedings in New Hampshire. To ensure that the records are complete, the statute provides that:

> "The clerks of the superior and municipal courts, or if there is no clerk the justice thereof, sheriffs, deputy sheriffs, police officers, jailers, and superintendents of houses of correction shall secure and forward to the director all such information as he may direct relative to persons brought before said courts or arrested or in the custody of such officers."

RSA 106-B:14.

In view of the well established administrative practice by the division of State police of maintaining criminal records on all criminal convictions in the New Hampshire courts, and the necessity of having speedy access to those records for police investigations, we hold that Officer Carpenito's reliance on the accuracy of police records was not reckless for the purpose of preparing an affidavit for a search warrant to issue.

The trial court's observation that the seven errors enhanced a finding of probable cause is not a reasonable basis upon which to conclude that the misrepresentations were reckless. The trial court held that "in cumulation, the misrepresentations contained in the affidavit rise to the level of recklessness . . . ." It conceded, however, that "it is arguable that several of the enumerated misstatements were the products of mere negligence or oversight . . . ."

After a review of the record produced at the suppression hearing, this court cannot find adequate support in the record for the trial court's factual finding that Officer Carpenito acted recklessly. Officer Carpenito had a reasonable basis for his belief that the facts he attested to were true, and he did not act recklessly. *See State v. Renfrew*, 122 N.H. 308, 311, 444 A.2d 527, 529 (1982). We therefore reverse the trial court's finding of recklessness.

When misstatements, not intentionally or recklessly made, appear in an affidavit, the appropriate remedy is to excise the facts misstated and then to examine the affidavit to determine whether

probable cause exists for a warrant to issue. *Id.* We note that the trial court found that the "misstatements, taken together, were necessary to the finding of probable cause." We disagree.

When ascertaining probable cause based upon an affidavit in support of a request for a wiretap, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *State v. Andrews*, 125 N.H. 158, 165, 480 A.2d 889, 893 (1984) (quoting *Illinois v. Gates*, 103 S. Ct. 2317, 2335 (1983)). "Affidavits in support of search warrants must be read, tested and interpreted in a realistic fashion and with common sense . . . . Reviewing courts should pay great deference to a magistrate's determination of probable cause and should not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense." *State v. Sands*, 123 N.H. 570, 604, 467 A.2d 202, 223 (1983) (citations omitted).

After excising all seven misstatements and reviewing the excised affidavit, we find sufficient probable cause for the warrant to issue. The facts remaining in the excised document concerning past criminal activity, as well as the observations of trained police officers concerning the pattern of telephone calls revealed by the pen registers, *see State v. Maxfield*, 121 N.H. 103, 106, 427 A.2d 12, 14 (1981), form a sufficient basis for a finding of probable cause. *See State v. Andrews, supra* at 165, 480 A.2d at 893.

Accordingly, we reverse and vacate the trial court's order suppressing the evidence based upon the wiretap of the Varagianis' telephone and remand for the trial court's consideration of other issues raised below but undecided in the court's suppression order.

*Reversed and remanded.*

All concurred.