Hillsborough-southern judicial district
No. 2005-405

## THE STATE OF NEW HAMPSHIRE

v.

## RAYMOND PAUL THOMAS

Argued: May 10, 2006
Opinion Issued: September 27, 2006

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*Andrew Winters* and *Theodore M. Lothstein*, assistant appellate defenders, of Concord (*Mr. Winters* on the brief, and *Mr. Lothstein* orally), for the defendant.

HICKS, J. The defendant, Raymond Paul Thomas, appeals his conviction of one count of attempted murder, *see* RSA 629:1 (Supp. 2005), and one count of first degree assault, *see* RSA 631:1 (1996), following a jury trial in the Superior Court (*Hampsey*, J.). He argues that the trial court erred by refusing to instruct the jury on the ostensibly lesser-included offenses of attempted first degree assault, *see* RSA 631:1, I(a) (1996); RSA 629:1, and reckless conduct, *see* RSA 631:3, I (1996). We reverse and remand the conviction for attempted murder.

The record supports the following facts. On March 24, 2002, the defendant used a knife to repeatedly stab his girlfriend, Rebecca McKenzie, in their apartment after accusing her of having an affair the night before. The defendant also stabbed McKenzie's friend, Cheryl Ann Voight, after she entered the apartment to help McKenzie.

At trial, McKenzie testified that she had stayed out all night and returned to the apartment around 6 a.m. on the morning of March 24. The defendant was waiting for McKenzie and appeared to have been drinking throughout the night. The defendant and McKenzie argued about where she had been. The argument continued into the afternoon, when McKenzie called Voight to come get her. McKenzie testified that they continued arguing and she ended up on the floor with the defendant on top of her. She further testified that she was unsure what happened after that, but she woke up on the floor, unable to move her head and with the taste of blood in her mouth. She testified that while still kneeling on her back, the defendant told her that he wanted her to die.

Voight testified that she arrived a few minutes later and, after breaking into the apartment, pulled the defendant off McKenzie. She testified that the defendant took the knife out of McKenzie's back and turned on her, slashing her on the arm. Voight ran into the kitchen where she continued to struggle with the defendant who followed her. She testified that the defendant stabbed her two more times, repeatedly saying that he was going to kill the women. Voight ran outside to call 911, where she saw Officer McNulty's cruiser approaching and flagged him down. Voight explained that she and her friend had been stabbed and that McKenzie was still in the apartment with the defendant.

McNulty approached the apartment, announced his presence and ordered the defendant to surrender. The defendant claimed that he had a gun and would kill McNulty if he entered. Officer Donahue arrived at the scene. The two officers entered the apartment and found McKenzie on the floor, unresponsive in a pool of blood. The defendant yelled that McKenzie was badly hurt and needed an ambulance. The defendant, however, repeatedly refused to surrender, telling the officers he would kill them if they came after him.

Other officers arrived on the scene, including Sergeant Timothy Goulden. Concerned about McKenzie's condition, Goulden decided to advance on the defendant, who was hiding in a back bedroom. As the officers entered the bedroom, the defendant held his right hand behind his back and refused to surrender. The defendant walked towards the officers, refusing to obey their orders. Goulden pushed the defendant to throw him off balance and punched him three times in the face, stunning him. The defendant was then taken into custody, allowing the paramedics to enter the apartment and care for McKenzie.

At the hospital, McKenzie was treated for stab wounds, a fractured nose and considerable blood loss. The most serious stab wounds were those to her back, which had punctured a lung. McKenzie's treating surgeon testified that McKenzie would have died without treatment.

Voight was taken to the hospital and treated for cuts on her hands, a puncture wound in her back, a superficial cut on her left upper arm, and a deep cut on her left forearm.

The defendant was taken to a different hospital and treated for minor injuries, including a minor concussion and cuts to his fingers. At the hospital, the defendant seemed confused and smelled of alcohol. A blood sample showed that his blood alcohol concentration (BAC) was .278. The treating physician at the hospital testified that the defendant's speech was slurred and that he was sedate, although it was uncertain whether these symptoms were due to alcohol, his concussion or both. Both the treating physician and Goulden testified that it was difficult to determine what the effect of the .278 BAC was because seasoned alcoholics can function almost normally with a BAC equal to or greater than the defendant's.

Detective George McCarthy waited until the following day to question the defendant, who was intoxicated and babbling on the day of the incident. In the interview, the defendant said that he loved McKenzie "completely." He claimed to have consumed only four or five beers by the time McKenzie returned home that morning. The defendant said that McKenzie had started the fight by punching him in the right eye, at which point he "flipped out" and pushed her away. She then came after him and he stabbed her.

The defendant was indicted for attempted murder for stabbing McKenzie and first degree assault for stabbing Voight. At trial, the defendant requested an instruction on attempted first degree assault and reckless conduct as lesser-included offenses of the indictment for attempted murder. The trial court rejected this request and instructed the jury as to attempted murder for stabbing McKenzie and first degree assault with the lesser-included offense of second degree assault for stabbing Voight.

The jury convicted the defendant of attempted murder for stabbing McKenzie and first degree assault for stabbing Voight. This appeal followed.

On appeal, the defendant argues that the trial court erred by refusing to instruct the jury on attempted first degree assault and reckless conduct as lesser-included offenses of the attempted murder of McKenzie.

■ Whether the defendant is entitled to a lesser-included offense instruction involves two distinct inquiries. First, the lesser offense must be embraced within the legal definition of the greater offense. *In re Nathan L.*, 146 N.H. 614, 617 (2001). This entails a comparison of the statutory elements of each offense without reference to the evidence. *Id.* Second, the evidence adduced at trial must provide a rational basis for a finding of guilt on the lesser offense rather than the greater offense. *Id.*

A person is guilty of attempted murder if he "does or omits to do anything which ... is an act or omission constituting a substantial step toward," RSA 629:1, purposely causing the death of another. *State v. Allen*, 128 N.H. 390, 396 (1986). A person is guilty of attempted first degree assault if he "does or omits to do anything which ... is an act or omission constituting a substantial step toward," RSA 629:1, "purposely caus[ing] serious bodily injury to another." RSA 631:1, I(a). Finally, a person is guilty of reckless conduct if he "recklessly engages in conduct which places or may place another in danger of serious bodily injury." RSA 631:3, I.

■ Because the State concedes for the purposes of this appeal that the statutory elements of attempted first degree assault and reckless conduct are subsumed within the elements of attempted murder, we assume without deciding that attempted first degree assault and reckless conduct are lesser-included offenses of attempted murder. We express no opinion on the propriety of attempted first degree assault and reckless conduct as lesser-included offenses of attempted murder.

■ The second part of the analysis requires us to examine whether the evidence furnished a rational basis for a finding of guilt on the lesser-included offenses. *State v. O'Brien*, 114 N.H. 233, 236 (1974). The element of intent distinguishes attempted murder from attempted first degree assault and reckless conduct. Attempted murder requires intent to kill, *see* RSA 629:1; *Allen*, 128 N.H. at 396, while attempted first degree assault requires only intent to cause serious bodily injury, *see* 631:1, I(a), and reckless conduct requires no purposeful mens rea, *see* RSA 631:3, I. Consequently, the defendant was entitled to an instruction on the lesser-included offenses of attempted first degree assault and reckless conduct

only if the evidence provided a rational basis for the jury to conclude that he stabbed McKenzie recklessly or with the intent only to cause serious bodily harm.

The defendant first argues that the evidence supports the conclusion that he intended only to cause serious bodily injury to McKenzie, not to kill her, providing a rational basis for the jury to convict on the lesser-included offenses. The defendant points out that he told the investigating detective that he loved McKenzie "completely" and never mentioned that he intended to kill her during the interview the day after the stabbing. Moreover, the defendant argues that he was under duress from McKenzie's apparent infidelity and stabbed her in the heat of the moment.

The State responds by arguing that the evidence forecloses any rational conclusion that the defendant intended only to harm McKenzie. The State points to testimony establishing that the defendant pushed McKenzie to the floor, put his arm around her neck, his knee in her back, and repeatedly cut and stabbed her in the neck and back with a knife. McKenzie's testimony established that while stabbing her, the defendant repeated that he wanted her to die. Voight's testimony established that the defendant said he was going to kill both women. The testimony of the treating physician established that the resulting wounds were life-threatening. Further, the testimony of the responding police officers established that the defendant was aware of McKenzie's severe injuries, but held officers at bay by threatening to shoot them if they came inside. The defendant never denied the intent to kill in his interview with McCarthy.

Based upon the evidence adduced at trial, we find that the issue of intent was sufficiently disputed to provide a rational basis for the jury to conclude that the defendant acted only recklessly or with a purpose to cause only serious bodily injury. It is well settled that the jury has substantial latitude in determining the credibility of witnesses. *Morrill v. Tilney*, 128 N.H. 773, 778 (1986). It is the jury which observes the witnesses, judges their credibility and hears their testimony, accepting or rejecting it in whole or in part. *Id.* In determining witness credibility, the jury may accept some parts and reject other parts of testimony, and adopt one or the other of inconsistent statements by witnesses. *Id.* Accordingly, the defendant's statement to police that he "flipped out" in the face of McKenzie's infidelity and stabbed her after she came towards him provided a rational basis for the jury to conclude that the defendant acted recklessly or with a purpose only to cause serious bodily injury.

The defendant alternatively argues that he was so intoxicated as to negate any culpable intent, thereby providing a rational basis for a jury to

convict on the lesser-included offenses. The defendant had a .278 BAC shortly after the stabbing and gave incoherent remarks to police and paramedics. The defendant argues this indicia of intoxication provided a rational basis for the jury to convict on the lesser-included offenses because the defendant's intoxication negated his intent to purposely kill McKenzie.

The State responds that the defendant's level of intoxication was not so severe as to negate the intent to murder. The State relies on *State v. Guglielmo*, 130 N.H. 240 (1987). There, we held that the jury could have rationally found that the defendant was not too intoxicated to act with the purpose to kill where he had responded coherently and logically during negotiations with police, was aware of the seriousness of the situation, had fired in the direction of officers after saying he knew where they were, and said he would "kill them all." *Id.* at 246-47. The State points out that here the defendant understood the statements of police instructing him to surrender. While threatening to kill the officers, he acknowledged that McKenzie had been "gravely hurt" and required an ambulance. Medical and police witnesses testified that a chronic alcoholic such as the defendant could function normally with high levels of intoxication. The State also points to testimony that established the defendant spoke coherently later on the day of the stabbing when officers in the hospital mentioned McKenzie's condition in front of him. Lastly, the State points to several beer cans with red smudges found in the apartment, suggesting the defendant may have become more intoxicated following the stabbing.

RSA 626:4 (1996) provides that:

> Intoxication is not, as such, a defense. The defendant may, however, introduce evidence of intoxication whenever it is relevant to negate an element of the offense charged, and it shall be taken into consideration in determining whether such element has been proved beyond a reasonable doubt.

Considering the entire record, we cannot say there was no rational basis for a jury to find that the defendant's intoxication negated any purpose to kill McKenzie. The defendant's conduct following his arrest and his .278 BAC both indicate severe intoxication. Moreover, the State's reliance on *State v. Guglielmo* is misplaced. Although the defendant here displayed somewhat similar conduct, *Guglielmo* stands for the proposition that the jury could reasonably have found the defendant's intoxication did not negate his intent to kill, not that it was the only rational conclusion. *See Guglielmo*, 130 N.H. at 247. In the instant case, the testimony of medical and police experts failed to foreclose the possibility that the defendant, although a seasoned alcoholic, was severely affected by his intoxication.

Similarly, it was for the jury to resolve whether the defendant's conduct was brought on by intoxication or by his minor concussion. Finally, several beer cans with red smudges do not conclusively prove that the defendant consumed more alcohol after the stabbing.

■ We are not persuaded that the evidence precluded any rational basis for the jury to find that the defendant's intoxication negated his ability to form a purposeful intent to kill. Considering the defendant's BAC and his conduct following the stabbing, the jury could have convicted on the lesser-included offenses by rationally concluding that the defendant, albeit too intoxicated to form the intent to kill, still acted recklessly or with the intent only to cause serious bodily harm.

After reviewing the record, we find that there was a rational basis for the jury to convict on the lesser-included offenses. Accordingly, the defendant was entitled to jury instructions on attempted first degree assault and reckless conduct as lesser-included offenses of attempted murder. We reverse and remand the defendant's conviction for attempted murder. The conviction for first degree assault is affirmed, as it was not appealed.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred; DALIANIS, J., concurred specially.

DALIANIS, J., concurring specially. Because I agree that the evidence furnished a rational basis for the jury to find the defendant guilty of attempted first degree assault and/or reckless conduct instead of attempted murder, I concur in the majority opinion. I write separately because it is not obvious to me that the statutory elements of attempted first degree assault and reckless conduct are subsumed within the elements of attempted murder. Because the State conceded this issue for the purposes of this appeal, the majority properly does not analyze it; however, it seems to be an issue that we should decide in a future case.

Although it appears that few courts have addressed whether attempted first degree assault is a lesser-included offense of attempted murder, several have addressed whether first degree assault is a lesser-included offense of murder and have reached different conclusions. *Compare Hayes v. State*, 368 So. 2d 374, 376 (Fla. Dist. Ct. App.) (assault is not lesser-included offense of murder; "the only lesser included offenses which must be instructed upon in a homicide case [are] those offenses that involve[] a lawful or unlawful death"), *cert. denied*, 378 So. 2d 345 (Fla. 1979), *with People v. Williams*, 374 N.W.2d 158, 162 (Mich. Ct. App. 1985) (offenses of assault with intent to murder, assault with intent to do great bodily harm

less than murder and assault with dangerous weapon are "cognate lesser offenses" of first degree murder), *appeal denied*, 430 N.W.2d 148 (Mich. 1988).

Courts have also disagreed regarding whether reckless conduct is a lesser-included offense of attempted murder. *Compare State v. Feliciano*, 618 P.2d 306, 308 (Haw. 1980) (reckless endangering in the second degree is lesser-included offense of attempted murder because, in both crimes, the victim does not die but is placed in jeopardy of being injured, and legislative scheme places reckless endangerment in same classification as murder and attempted murder), *and Guzman v. State*, 188 S.W.3d 185, 189-90 (Tex. Crim. App. 2006) (deadly conduct, which requires proof that defendant recklessly engaged in conduct that placed victim in imminent danger of serious bodily injury, is lesser-included offense of attempted murder), *with Wilson v. State*, 697 N.E.2d 466, 477 (Ind. 1998) (trial court correctly refused to instruct on criminal recklessness as a lesser-included offense of attempted murder), *and State v. Rush*, 50 S.W.3d 424, 430-31 (Tenn. 2001) (neither reckless aggravated assault nor felony reckless endangerment are lesser-included offenses of attempted second-degree murder, but misdemeanor reckless endangerment is such a lesser-included offense).