# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0301, <u>State of New Hampshire v. Richard A. Germain</u>, the court on May 4, 2018, issued the following order:**

Having considered the brief, memorandum of law, and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Richard Germain, appeals his convictions, following a bench trial, on eighteen counts of possession of child pornography and one count of falsifying physical evidence. <u>See</u> RSA 641:6 (2016); RSA 649-A:3 (2016). He argues that the Superior Court (<u>Delker</u>, J.) erred in denying his motion to suppress evidence and statements obtained as a result of execution of a search warrant.

The record shows that, on January 29, 2016, Detective Tompkins of the Derry Police Department applied for a warrant to search the defendant's person, home, and motor vehicle for evidence of possession of child pornography. Tompkins' affidavit supporting the warrant application included the following facts. On January 26, 2016, Tompkins received a call from Probation and Parole Officer Clemons stating that one of his probationers had images of child sexual abuse, involving "females in their early teens," on her cell phone. Clemons arrested the probationer for an unrelated offense and seized her cell phone. In his case report, Clemons stated that in the recently-deleted photographs on the cell phone, he noticed several images of what appeared to be "underage girls in pornographic type poses." Clemons also located a video that showed some of the same images on a computer. The images appeared to be of "girls in their early teens and under." The probationer told Clemons that the images were taken from the defendant's computer. On January 28, 2016, Clemons delivered the phone to Tompkins.

That same day, Tompkins spoke with the probationer and learned that she had recently moved out of the defendant's residence, where she had lived with the defendant, the defendant's son-in-law, and the defendant's grandson, who was her ex-boyfriend. The probationer reported that the defendant lived in the unfinished basement, and that he owned, among other things, a desktop computer, three laptop computers, which he kept in the basement or in his car, and at least one cell phone.

The probationer told Tompkins that, in the summer of 2015, she overheard an argument between the defendant's son-in-law and her ex-boyfriend in which the son-in-law had stated that he was "disgusted" with the defendant "for being a child molester and all the child porn he watches on his computer in the basement all the time." The probationer also reported that, on a separate occasion, she overheard her ex-boyfriend's uncle [the defendant's son] state that he destroyed the defendant's "computer, pictures, DVDs, etc.," by lighting them on fire to protect the defendant from prosecution, in response to a prior criminal investigation.

Tompkins reported that Detective Richard learned that on January 13, 2011, special agent Sajo discovered a website known to post images of child pornography. Sajo observed several images of children believed to be between the ages of six and eight years old involved in "sexual situations." Sajo obtained a federal search warrant on the company that hosted the website, which resulted in the seizure of approximately 861 suspected child pornography files. The search also provided the internet protocol addresses used to access the website, including one address which the defendant used to request approximately 1,000 images. Tompkins' affidavit contained Sajo's graphic descriptions of some of the images of child pornography that were viewed using this address. However, that case was closed due to stale information and insufficient evidence.

The probationer also reported to Tompkins that her ex-boyfriend's mother, who is the defendant's daughter, admitted to the probationer that the defendant sexually assaulted her, and that she caught the defendant sexually assaulting the probationer's ex-boyfriend when he was two years old. The ex-boyfriend's mother also told the probationer that the defendant admitted to having sexually assaulted the ex-boyfriend when he was between the ages of one and seven years old.

The probationer reported that, before Christmas 2015, while she was moving out of the defendant's residence, she wanted to see if the rumors about the defendant's possession of child pornography were true. She turned on his computer, opened the "pictures" folder, and observed images of girls "posing sexually," noting that "every picture saved was a girl from 2 years old to 16 years old." The probationer described the pictures as "disturbing," "disgusting," and "beyond acceptable." They included girls "masturbating and provocative pictures of genitalia."

The probationer photographed a few of the pornographic images from the computer and made a video of some of the images, intending to "turn [the defendant] in" to the authorities. However, when she told her ex-boyfriend what she had found on his grandfather's computer, and showed him one of the

images, he "slapped her, yelled at her, threw her phone at her, threw a drink at her, and told her to delete it." As a result, the probationer deleted the images and did not report the defendant. Clemons found the images in the recently deleted photographs file on her cell phone.

In his appeal, the defendant argues that the trial court violated Part I, Article 19 of the State Constitution and the Fourth and Fourteenth Amendments to the United States Constitution by denying his motion to suppress. He asserts that: (1) the affidavit supporting the application for a search warrant lacked the detail and specificity necessary to support a finding of probable cause; (2) the search warrant lacked sufficient particularity as to the items to be searched and seized; and (3) the statements he made to the police while they were searching his home were the result of an unlawful detention. We first address the defendant's claims under the State Constitution and rely upon federal law only to aid in our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

"Part I, Article 19 of the State Constitution requires that search warrants be issued only upon a finding of probable cause." State v. Ward, 163 N.H. 156, 159 (2012). "Probable cause exists if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." Id. "The police must demonstrate in an application for a search warrant that there is a substantial likelihood that the items sought will be found in the place to be searched." State v. Ball, 164 N.H. 204, 207 (2012). "However, they need not establish with certainty, or even beyond a reasonable doubt, that the search will lead to the desired result." Id. (quotation omitted).

We apply a totality-of-the-circumstances test to review the sufficiency of an affidavit submitted with a warrant application. Id. The task of the issuing court is to make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before it, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id.

Our duty as the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. Id. "While an affidavit may establish probable cause without the observance of contraband at the location to be searched," in order to meet constitutional muster, "affidavits must establish a sufficient nexus between the illicit objects and the place to be searched." Id. As a reviewing court, we may consider only the information that the police brought to the issuing court's attention. Id.

"We review the superior court's order de novo except with respect to any controlling factual findings." Id. We afford much deference to the superior court's probable cause determination and will not invalidate warrants by reading the supporting affidavit in a hypertechnical sense. Id. at 208. "Rather, we review the affidavit in a common-sense manner, and determine close cases by the preference to be accorded to warrants." Id. (quotation omitted).

The defendant first argues that the affidavit supporting the application for a search warrant lacked the detail and specificity necessary to support probable cause. He argues that in order for the magistrate to determine independently whether there was probable cause to believe that evidence of child pornography could be found in his home, it was necessary to attach the images to the affidavit or provide a detailed description of them.

RSA 649-A:3, I(a) provides that it is unlawful for any person to knowingly possess any visual representation of a child engaging in sexually explicit conduct. RSA 649-A:2, III (2016) defines sexually explicit conduct to include masturbation and "any lewd exhibitions of the . . . genitals." The images from the probationer's cell phone were not attached to the affidavit, and Tompkins had not viewed them. However, Clemens had viewed them and described them as depicting "underage girls in pornographic type poses." The probationer also viewed them, and described them as depicting girls "masturbating and provocative pictures of genitalia," noting that "every picture saved was a girl from 2 years old to 16 years old." She described the pictures as "disturbing," "disgusting," and "beyond acceptable." These descriptions fit the statutory definition of child pornography.

In addition to the descriptions, there were other circumstances which, together with the descriptions, established probable cause to believe that the defendant possessed child pornography, including the statement by the son-in-law that the defendant watched child pornography on his computer, and the statement by the defendant's son [the ex-boyfriend's uncle] that he destroyed the defendant's computer to protect him from prosecution, in response to a prior criminal investigation. The defendant argues that these other circumstances were insufficient because, according to the affidavit, any evidence of child pornography had been destroyed. "If older information, despite its age, contributes to an inference that probable cause exists at the time of the application," it may be properly considered. State v. Cannuli, 143 N.H. 149, 152 (1998). While it may have been less likely, in view of this information, that the defendant's computer contained images from years earlier, the information made it more likely that the images described by Clemons and the probationer were pornographic.

The defendant next argues that the search warrant lacked sufficient particularity as to the items to be seized. "[S]earch warrants must describe with particularity the area to be searched and the things to be seized." State v. Moreau, 113 N.H. 303, 308 (1973). "The degree of specificity required in a search warrant depends upon the nature of the items to be seized." State v. Emery, 123 N.H. 630, 633 (1983). Tompkins sought a warrant authorizing the search of the defendant's person, residence, and vehicle, and the seizure of "any and all computer equipment," and any electronic devices "capable of collecting . . . storing . . . or transmitting electronic . . . data," including cell phones and other electronic mobile devices. The defendant argues that the category of devices to be seized was too broad and gave no indication of how the police could search the seized items. He asserts that the search warrant should have been limited to devices likely to hold the images sought, rather than those "capable" of containing such images. The statements in Tompkins' affidavit support the inference that the defendant could have kept child pornography on any of his electronic devices. Accordingly, we conclude that the search warrant was sufficiently particularized. See id.

To the extent that the defendant argues that the warrant was defective because it lacked "a protocol for ensuring the investigating officers do not have access to documents not authorized" and "to protect the data on the devices," he has failed to demonstrate that he raised this issue in the trial court. Accordingly, the issue is not preserved for review. See State v. Mouser, 168 N.H. 19, 26-28 (2015).

Finally, the defendant argues that the trial court erred in failing to suppress statements he made to Tompkins as a result of his allegedly unlawful detention while the police executed the search warrant. "In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous." State v. Broadus, 167 N.H. 307, 310 (2015) (quotation omitted). We need not decide whether the police had the authority to detain the defendant while executing the warrant because the trial court found that he was not detained, and the record supports the court's finding. Although the defendant testified at the motion hearing that he did not believe he was free to leave during the search, Tompkins testified that he told the defendant, after the search of his person, that he was free to leave, but that the defendant chose to stay. We defer to a trial court's judgment on such issues as resolving conflicts in testimony, measuring the credibility of witnesses, and determining the weight to be given to testimony. See State v. Thomas, 154 N.H. 189, 193 (2006).

As the Federal Constitution offers the defendant no greater protection than the State Constitution under these circumstances, see Ward, 163 N.H. at 163; United States v. Brunette, 256 F.3d 14, 16 (1st Cir. 2001), we reach the

5

same result under the Federal Constitution as we do under the State Constitution.

<u>Affirmed</u>.

Lynn, C.J., and Hicks, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,**
**Clerk**
